112 S.W.3d 256 (2003)
In the Matter of J. G., a Juvenile.
No. 13-02-615-CV.
Court of Appeals of Texas, Corpus Christi-Edinburg.
July 17, 2003.
*258 Bobby D. Brown, Attorney At Law, Victoria, for Appellant.
M.P. "Dexter" Eaves, Dist. Atty., and Michael M. Kelly, Asst. Dist. Atty., Victoria, for The State.
Before Chief Justice VALDEZ and Justices RODRIGUEZ and CASTILLO.

OPINION
Opinion by Justice RODRIGUEZ.
The trial court found that appellant, J.G., a juvenile, violated his intensive probation, and committed him to the custody of the Texas Youth Commission. By three issues, J.G. complains that the trial court erred in: (1) admitting his attendance records and probation report into evidence; (2) allowing a probation officer to testify from J.G.'s probation report; and (3) allowing a student attendance officer to testify from J.G.'s attendance records. We affirm.

I. Facts
On October 15, 2001, J.G. was placed on intensive supervision probation for a period of twelve months. By the terms of his probation, J.G. was required to report four times a week to his probation officer, enroll in and attend school, not associate with *259 adjudicated delinquents, comply with curfew requirements, and complete community service time. On August 31, 2002, J.G. was taken into custody pursuant to a warrant which was issued because of J.G.'s alleged failure to report to his probation officer.
On October 3, 2002, the State's motion to revoke probation was heard. During the hearing on the merits or facts, J.G.'s probation officer, Kelley Arneke, testified regarding J.G.'s probation violations. Arneke referred to J.G.'s case file as he testified. Also during the hearing, Rise Konarik, a Victoria Independent School District (V.I.S.D.) student attendance officer, testified while referencing J.G.'s V.I.S.D. attendance report. The attendance report was admitted into evidence.
Following the hearing on the merits or facts, the trial court proceeded to the disposition phase of the hearing. During this phase, the court heard testimony regarding J.G.'s previous juvenile record, and a juvenile probation officer recommended rehabilitation for J.G. The court then committed J.G. to the custody of the Texas Youth Commission.

II. Standard of Review
The trial court's modification of a juvenile disposition is reviewed under an abuse of discretion standard. See In re D.S.S., 72 S.W.3d 725, 727 (Tex.App.-Waco 2002, no pet); In re H.G., 993 S.W.2d 211, 213 (Tex.App.-San Antonio 1999, no pet.); In re J.L., 664 S.W.2d 119, 120 (Tex.App.Corpus Christi 1983, no writ). The trial court's refusal to exclude witness testimony is also reviewed under an abuse of discretion standard. See Pierson v. Noon, 814 S.W.2d 506, 509 (Tex.App.-Houston [14th Dist.] 1991, writ denied). It is a clear abuse of discretion where the record indicates the trial court's decision was arbitrary or unreasonable. Simon v. York Crane & Rigging Co., 739 S.W.2d 793, 795 (Tex.1987).

III. APPLICABILITY OF SECTION 54.05(e) OF THE FAMILY CODE
By his first issue, J.G. contends the trial court erred in admitting the V.I.S.D. attendance report and the juvenile probation department's report into evidence during the hearing on the merits or facts of the State's motion to modify disposition.
A hearing to modify disposition for a juvenile is divided into two distinct phases. See Tex. Fam.Code. Ann. § 54.05(e) (Vernon 2002); In re J.K.A. v. State, 855 S.W.2d 58, 62 (Tex.App.-Houston [14th Dist.] 1993, writ denied). The first phase of the trial is a fact-finding, adjudicative trial on the merits. This phase establishes the reason, if any, for modifying the disposition. See D.S.S., 72 S.W.3d at 729; J.K.A., 855 S.W.2d at 62. The second phase of the trial is a data-gathering phase to assist in formulating the appropriate disposition for the juvenile. See D.S.S., 72 S.W.3d at 728-29; J.K.A., 855 S.W.2d at 62.
Section 54.05(e) of the family code limits the written reports the trial court may consider during the first phase, the hearing on the merits or facts for a motion to modify disposition of a juvenile probationer. See Tex. Fam.Code. Ann. § 54.05(e). Section 54.05(e) states that "after the hearing on the merits or facts, the court may consider written reports from probation officers, professional court employees, or professional consultants in addition to the testimony of other witnesses." Id. The plain language of this statute prohibits a juvenile court from considering written reports from probation officers and professional consultants until after the hearing on the merits or facts has been conducted. See id.; D.S.S., 72 *260 S.W.3d at 728-29. The purpose of this split hearing system is to require the juvenile court to adjudge the violation of a condition of probation without knowing the possibly prejudicial material contained in the reports written by probation officers, professional court employees, or professional consultants. See D.S.S., 72 S.W.3d at 729.
J.G. complains the trial court erred by admitting V.I.S.D.'s attendance report into evidence during the hearing on the merits or facts because the written attendance report was prepared by a professional consultant. J.G. characterizes Konarik, a V.I.S.D. student attendance officer, as a professional consultant.
The Texas Legislature did not define "professional consultant" in the family code, see Tex. Fam.Code. Ann. § 54.05(e), and there is little case law construing the definition of "professional consultant." See In re C.D.R., 827 S.W.2d 589, 592 (Tex.App.-Houston [1st Dist.] 1992, no writ). However, a social worker has been held to be a "professional consultant." See In re C.J.H., 79 S.W.3d 698, 705 (Tex.App.-Fort Worth 2002, no pet.). Moreover, a Texas Youth Commission assistant superintendent, who was described as a trained professional who interacted with a juvenile, has also been characterized as a professional consultant. See C.D.R., 827 S.W.2d at 592. A general definition of "professional consultant" is one who gives expert or professional advice as a source of livelihood, or one who has great skill at giving expert or professional advice. See Webster's Third New Int'l Dictionary 490 (1993) (definition of consultant); Webster's Third New Int'l Dictionary 1811 (1993) (definition of professional).
Konarik was not a social worker, and the record does not show that she interacted with J.G. Konarik testified that she was merely the custodian of the attendance records for V.I.S.D. We conclude, therefore, under the facts of this case, that Konarik, a student attendance officer who was custodian of the school's attendance records, is not a professional consultant. Thus, this argument fails.
J.G. also complains of the trial court's admission of his juvenile probation report into evidence during the hearing on the merits or facts. The record reveals, however, that J.G.'s probation report was not admitted into evidence during this phase of the hearing. Nonetheless, J.G. asserts that Arneke's oral reference to the report was, in effect, admission of the report into evidence. Section 54.05(e) provides that the trial court may not consider written reports prepared by probation officers during this phase of the proceeding. Tex. Fam.Code. Ann. § 54.05(e). However, section 54.05(e) does not contain language limiting testimony regarding the written report. Id. The report at issue was brought into the courtroom and used by Arneke during his testimony to recall exact probation violations and the dates they occurred. We hold that the testimony given in this instance, regarding the probation report, was not in violation of section 54.05(e).
Moreover, as previously stated, the purpose of section 54.05(e) is to prohibit a juvenile court from considering possibly prejudicial material, such as social history reports, until after the court has determined whether a violation of probation has occurred. See D.S.S., 72 S.W.3d at 728-29. Written reports from probation officers, professional court employees, or professional consultants that are used only to prove probation violations and not to unfairly prejudice the court will be allowed notwithstanding section 54.05(e). See id. Arneke used the written probation report during the initial hearing on the merits or *261 facts of the motion to revoke to prove that J.G. had violated the conditions of his probation. See id. Likewise, even if we were to characterize Konarik as a professional consultant, she testified from the attendance record to prove violations of probation. See id. Therefore, the written reports testified from and admitted in this case do not come within the scope of section 54.05(e) of the Texas Family Code. Accordingly, J.G.'s first issue is overruled.

IV. ADMISSION OF TESTIMONY

A. PROBATION OFFICER
By his second issue, J.G. contends the trial court erred by allowing Arneke to refer to and read the probation report into the record. At trial, J.G. objected that "the witness is testifying from a file without first determining what his personal knowledge is or not in this matter." We construe J.G.'s argument on appeal also to be a challenge to the admissibility of Arneke's testimony under Texas Rule of Evidence 602.[1]
Rule 602 states "a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Tex.R. Evid. 602. J.G. does not refer us to specific testimony that was given without Arneke's personal knowledge. Furthermore, the record establishes that Arneke was: (1) a probation officer who supervised J.G. from October 2001 to June 2002; (2) the custodian of the probation records; and (3) personally familiar with the records and how they were kept. Thus, we conclude the trial court did not abuse its discretion in finding that Arneke had personal knowledge of the matter. J.G.'s second issue is overruled.

B. SCHOOL ATTENDANCE OFFICER
By his third issue, J.G. asserts it was error for the court to allow Konarik to read the V.I.S.D. attendance report into evidence because the State failed to show Konarik had independent recollection of the events in question.[2] In order to address this contention, we must first determine whether the attendance records were properly admitted into evidence because improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence. See Brooks v. State, 990 S.W.2d 278, 287 (Tex.Crim.App.1999); Matz v. State, 21 S.W.3d 911, 912-13 (Tex. App.-Fort Worth 2000, pet. ref'd). Therefore, if the attendance records were properly admitted, then Konarik's subsequent testimony, wherein she read from the attendance records, would be admissible, regardless of error. See Brooks, 990 S.W.2d at 287; Matz, 21 S.W.3d at 912-13.
Texas Rule of Evidence 803(6) states that records of a regularly conducted *262 business activity are admissible if they were made at or near the time of the activity, made by, or from data created by, a person with knowledge, and kept as part of a regularly conducted business activity. Tex.R. Evid. 803(6); Mitchell v. State, 750 S.W.2d 378, 379 (Tex.App.-Fort Worth 1988, pet. ref'd). This rule does not require the creator of the records to be the testifying witness who establishes the predicate for introduction of the records. See Montoya v. State, 832 S.W.2d 138, 141 (Tex.App.-Fort Worth 1992, no pet.); Mitchell, 750 S.W.2d at 379. Rule 803(6) provides that records can be testified to by the custodian of the records. Tex.R. Evid. 803(6); Montoya, 832 S.W.2d at 141. Additionally, a qualified witness need not have personal knowledge as to the contents of the records but rather needs only personal knowledge of the mode of preparation of the records. See Montoya, 832 S.W.2d at 141; Mitchell, 750 S.W.2d at 379.
Konarik testified that she was the custodian of the school records for V.I.S.D., making her a qualified witness to lay the predicate for introduction of records. Konarik also testified that the records were made at or near the time of the incidents that occurred and were made by someone with personal knowledge of the event. Since Konarik was able to show that she had personal knowledge of the mode of preparation of the records, see Montoya, 832 S.W.2d at 141, we hold the State adequately created the predicate to allow these records to be admitted under rule 803(6), the business records exception to the hearsay rule. See Tex.R. Evid. 803(6). Thus, because these records were rightfully admitted by the trial court, we find error, if any, in allowing Konarik to testify to evidence contained in the records was harmless. See Brooks, 990 S.W.2d at 287. J.G.'s third issue is overruled.

V. CONCLUSION
Accordingly, we affirm the judgment of the trial court.
NOTES
[1] J.G. further challenges the admissibility of Arneke's testimony under rules of evidence 612 and 803. However, because these challenges do not comport with J.G.'s objection at trial, we find they are not preserved for our review. See Tex.R.App. P. 33.1(a); Wal-Mart Stores, Inc. v. McKenzie, 997 S.W.2d 278, 280 (Tex.1999).
[2] By issue three, J.G. also generally contends the trial court erred by admitting his V.I.S.D. attendance report into evidence. He provides no further argument regarding the admission of this report. See Tex.R.App. P. 38.1(h). Further, this general assertion does not comport with the objection raised at trial, that being J.G. had not received the records beforehand, and, thus, had not been given adequate opportunity to prepare a cross-examination. See Sterling v. State, 800 S.W.2d 513, 521 (Tex.Crim.App.1990); Greenwood v. State, 740 S.W.2d 857, 860 (Tex.App.-Dallas 1987, no pet.). Therefore, nothing has been presented for our review regarding alleged error in the admission of J.G.'s school records. See Sterling, 800 S.W.2d at 521; Greenwood, 740 S.W.2d at 860.