Opinion issued February 8, 2007

















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-05-00369-CV
  __________
 
 
ROYCE HOMES, L.P., Appellant
 
V.
 
GILBERT ESPINOSA D/B/A GECC CONSTRUCTION, Appellee
 
 

 
 
On Appeal from County Civil Court at Law No. 3
Harris County, Texas
Trial Court Cause No. 763305
 

 
MEMORANDUM OPINION
          A jury found appellant, Royce Homes, L.P., liable on a claim for quantum
meruit made by appellee, Gilbert Espinosa d/b/a GECC Construction (“Espinosa”). 
The jury awarded Espinosa $5,162 in damages and $5,250 in attorney’s fees. In three
points of error, Royce Homes argues that (1) the trial court erred in excluding the
purchase orders in Exhibit 9 as hearsay because they meet the business records
exception to the hearsay rule, (2) Espinosa waived his objection to the admission of
Exhibit 9 by questioning a witness about its contents, and (3) the evidence is legally
and factually insufficient to support the jury’s award of damages. We reverse and
remand. 
Background
          Royce Homes, a residential construction company, contracted with Anthony
Trent for the framing work on a house. Trent subcontracted the work to Espinosa, an
independent contractor, for $3,336. Trent was arrested while the framing work was
ongoing and neither party has had contact with him since 2001. In July 2001,
Espinosa submitted a $3,887 invoice to Royce Homes for the framing work
performed on the house being constructed by Royce Homes at 17619 W. Copper
Lakes. He submitted additional invoices for various small jobs performed on
different homes in the same subdivision. Royce Homes did not pay Espinosa. Royce
Homes claims that the framing work performed at the house was unsatisfactory and
that it had to spend more than $6,000 to repair the poor workmanship.
          Espinosa sued Royce Homes


 for breach of contract, quantum meruit, unjust
enrichment, and fraudulent inducement. He also sought foreclosure and a mechanic
and materialman’s lien. Royce Homes answered with an affirmative defense and
sought a counterclaim alleging that “the services performed . . . were negligently
performed or, alternatively, not performed in a good and workmanlike manner. As
a result, defendant has been damaged in an amount in excess of $6,000.” To prove
the repair costs that Royce Homes allegedly paid as a result of the unsatisfactory
framing work, Royce Homes attempted to introduce Exhibit 9—a collection of 
purchase orders that it submitted to Hope Lumber for the materials needed for repairs. 
On each purchase order, there was a “comments” section where Royce Homes
described the reason for its purchase of additional materials. Many of these
comments demonstrate that the materials were purchased because of problems with
the framing job. The trial court ruled that Exhibit 9 was inadmissible because it
constituted “hearsay within hearsay.” 
          The jury found in favor of Espinosa on his quantum meruit claim


 and against
Royce Homes on its counterclaim. The jury awarded Espinosa $5,162 in damages
and $5,250 in attorney’s fees.
                                               Exclusion of Evidence
          In points of error one and two, Royce Homes argues that Exhibit 9 was
improperly excluded as hearsay because the documents meet the business records
exception to the hearsay rule and because Espinosa waived his objection to the
admission of Exhibit 9 by questioning a witness about information contained in the
documents. 
Standard of Review
          A trial court has broad discretion in deciding whether to admit or exclude
evidence. See Nat’l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527–28 (Tex.
2000). An appellate court will reverse a trial court’s decision to exclude evidence
only if the trial court abused its discretion. Id. Furthermore, the appellant must show
that the excluded evidence was controlling on a material issue, was not cumulative
of other evidence, and that the error probably caused the rendition of an improper
judgment. Tex. R. App. P. 44.1(a)(1); Williams Distrib. Co. v. Franklin, 898 S.W.2d
816, 817 (Tex. 1995).
Analysis
          Hearsay is a statement, other than one made by the declarant while testifying
at trial, that is offered to prove the truth of the matter asserted. Tex. R. Evid. 801(d). 
Hearsay statements are generally inadmissible, but there are many exceptions to this
general rule. See Tex. R. Evid. 803. One such exception is the business records
exception, which allows for the admission of records of regularly conducted business
activities. Tex. R. Evid. 803(6). Rule of Evidence 803 provides as follows:
The following are not excluded by the hearsay rule, even though the
declarant is available as a witness:
 
. . . .
 
(6) Records of Regularly Conducted Activity. A memorandum, report,
record, or data compilation, in any form, of acts, events, conditions,
opinions, or diagnoses, made at or near the time by, or from information
transmitted by, a person with knowledge, if kept in the course of a
regularly conducted business activity, and if it was the regular practice
of that business activity to make the memorandum, report, record, or
data compilation, all as shown by the testimony of the custodian or other
qualified witness, or by affidavit that complies with Rule 902(10),
unless the source of information or the method or circumstances of
preparation indicate lack of trustworthiness. “Business” as used in this
paragraph includes any and every kind of regular organized activity
whether conducted for profit or not.    
Id. Records that would otherwise be hearsay are, therefore, admissible under Rule
803(6) if the following four requirements are met: (1) the records were made and
kept in the course of a regularly conducted business activity, (2) it was the regular
practice of that business activity to make the records, (3) the records were made at or
near the time of the event being recorded, and (4) the person making the records or
submitting the information had personal knowledge of the events being recorded. 
West v. State, 124 S.W.3d 732, 735 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d).
A qualified witness need not have personal knowledge as to the contents of the
records, but rather needs only to have personal knowledge as to the mode of
preparation of the records. In re J.G., 112 S.W.3d 256, 262 (Tex. App.—Corpus
Christi 2003, no pet.).
          Royce Homes offered into evidence Exhibit 9, during the examination of Glenn
Abhrams, a superintendent for Royce Homes. Exhibit 9 is a series of purchase orders
made by Royce Homes that document the purchase of materials by Royce Homes. 
These materials documented in the purchase orders were for the repair of work
performed by Espinosa. Abhrams testified that the documents in Exhibit 9 were kept
in the course of Royce Homes’s regular business activity and that they were made at
or near the time of the home repairs. Abhrams also testified as to how the documents
were created. 
          Espinosa asserts that Exhibit 9 is inadmissible because the documents were
based upon information obtained from Hope Lumber. The purchase orders, however,
were not based on information obtained from Hope Lumber. The fact that the
documents were purchase orders sent to a third party does not remove them from the
scope of the business records exception. In GT & MC, Inc. v. Tex. City Ref. Inc., 822
S.W.2d 252 (Tex. App.—Houston [1st Dist.] 1991, writ denied), we held that
invoices authored by outside vendors and submitted to TCR fell within the business
records exception because TCR had written information on the invoices, such as the
date of receipt and identity of the recipient. Id. at 257–58. TCR was permitted to
introduce the records, despite the fact that outside vendors were involved in their
creation. Id. In this case, Hope Lumber was the intended recipient of purchase orders
created entirely by Royce Homes. Hope Lumber did not create the documents in
Exhibit 9, and Royce Homes offered testimony from a witness who could verify the
method by which the records in Exhibit 9 were made. We hold that the documents
in Exhibit 9 meet the business records exception to the hearsay rule.
          This does not end our analysis. There remain the issues of whether Exhibit 9
was controlling on a material issue, whether it was cumulative of other evidence, and
whether the error of its exclusion probably caused the rendition of an improper
judgment. See Franklin, 898 S.W.2d at 817.
          We hold that Exhibit 9 was controlling on a material issue in Royce Homes’s
affirmative defense and counterclaim against Espinosa and was not cumulative. 
Although Abhrams testified as to Espinosa’s poor workmanship on the house and
estimated the amount of repairs Royce Homes had to perform on the house, only the
records in Exhibit 9 provided the exact figures of how much Royce Homes allegedly
spent in repairs and the nature of the repairs. When Abhrams testified that Royce
Homes spent $7,000 in repairs on the home, Espinosa’s counsel questioned him as
follows:
Q.Okay. Yeah, and you’re absolutely certain that the damages are
$7,000?
 
A.Plus or minus.
 
Q.Plus or minus what, dollars, ten dollars, five hundred dollars,
what?
 
A.Within a thousand bucks.
 
Q.Thousand, okay. But you know in this lawsuit they sued for
$6,000, that’s what they asked for in this lawsuit?
 
A.Okay.
 
Q.You know that?
 
A.I don’t know the exact figure.
 
Q.Does it surprise you that a year, three years after this whole event
that your company is asking for 6,000, and their expert on
damages is saying 7,000? You think the left hand and right hand
would talk about it, wouldn’t you? 
 
          A.      I don’t understand what the question is.
On re-direct, Royce Homes further questioned Abhrams on the cost of the repairs
incurred as a result of Espinosa’s poor workmanship.
Q.Mr. Abhrams, the exact costs that Royce Homes incurred to
correct the problems with 17619 West Copper Lakes, are all those
set out in detail in the company records that are Defendant’s
Exhibit No. 9?
 
A.Yes, they are.
 
Q.And if you took these and added them up you could come to an
exact figure?
 
A.Yes.
 
Q.And are these reasonable and necessary charges?
 
A.Yes.

Royce Homes again attempted to introduce Exhibit 9, and the trial court again
sustained Espinosa’s hearsay objection.
          In addition to the exhibit introducing evidence of the exact expense Royce
Homes incurred, the comments section in the records contained in Exhibit 9 detailed
the reasons the purchase orders were placed, such as “job done incorrectly.” These
notes on the records would have provided powerful substantiation of Abhrams’s lone 
testimony that failed to establish an exact amount for the damages for the
counterclaim. See Stergiou v. Gen. Metal Fabricating Corp., 123 S.W.3d 1, 6 (Tex.
App.—Houston [1st Dist.] 2003, pet. denied) (holding that the exclusion of
documentary evidence was harmful because “[t]he excluded evidence provided
powerful substantiation of Stergiou’s contentions; in its absence, Stergiou only had
his word”). Thus, we hold that Exhibit 9 was excluded in error and that its exclusion
probably caused the rendition of an improper judgment. 
          We sustain point of error one and reverse and remand for further proceedings. 
Because we have reversed the first point of error, we need not consider the second
point of error.
Sufficiency
          In point of error three, Royce Homes argues that the evidence was legally and
factually insufficient to support the damage award because the only testimony offered
to support the award came from a witness who did not testify that the work was
actually performed, that it was performed in a good and workmanlike manner, or that
the amount for which Espinosa invoiced Royce Homes was appropriate, reasonable,
or customary. Because we remand the case for further proceedings, we need not
address the factual sufficiency argument. 
Standard of Review
          In reviewing a challenge to the legal sufficiency of the evidence to support a
verdict, the court considers only the evidence that tends to support the finding and
disregards all evidence to the contrary. City of Keller v. Wilson, 168 S.W.3d 802, 827
(Tex. 2005). The standard is whether the evidence at trial would enable reasonable
and fair-minded people to reach the verdict under review. Id.
 
Analysis
          The jury was asked the following questions:
QUESTION 1
 
Did GILBERT ESPINOSA d/b/a GECC CONSTRUCTION perform
compensable work for ROYCE HOMES LTD d/b/a ROYCE HOMES? 
 
One party performs compensable work if valuable services are rendered
for another party who knowingly accepts and uses them and if the party
accepting them should know that the performing party expects to be
paid for the work.

          Answer: (YES)
 
If your answer to Question 1 is “Yes”, then answer Questions 2 and 3. 
Otherwise, do not answer Questions 2 and 3.

QUESTION 2
 
What is the reasonable value of such compensable work at the time and
place it was performed?
 
Do not include interest on any amount you might find.

          Answer in dollars and cents for damages, if any.

          Answer: ($5,162.00)
 
          Espinosa was not present at trial. Instead, his partner, Cindy Chen, was
GECC’s representative at trial. She testified that Espinosa did the field work, and she
handled the finances. She sent several invoices to Trent that went unanswered, so she
began to send the invoices to Royce Homes. The invoices were admitted into
evidence without objection. The invoice reflected a charge of $3,887 for the framing
work on the “17619 West Copper Lane” home. Ten additional invoices from GECC
to “Royce Home” were admitted showing small work orders requested by Royce
Homes in the same subdivision where the West Copper Lane home was located. The
total of the remaining invoices is $1,275. The total of all of the invoices that GECC
sent to Royce Homes is $5,162—the exact amount of damages found by the jury. We
hold the evidence is legally sufficient to support the jury’s finding.
          We overrule point of error three.
Conclusion
          We reverse and remand the judgment of the trial court. 


                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Justices Taft, Alcala, and Hanks.