**Opinion issued April 7, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00118-CR

———————————

**SANTOS AQUILEO CRUZ-ESCALANTE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Case No. 1311655**

---

**O P I N I O N**

A jury found appellant, Santos Aquileo Cruz-Escalante, guilty of the offense

of aggravated sexual assault of a child,[1] and the trial court assessed his punishment

---

[1]      *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) (Vernon Supp. 2015).

at confinement for twenty years.  In his sole issue, appellant contends that the trial court erred in limiting his cross-examination of one of the State's witnesses, thereby denying him the right to present a defense.[2]

We affirm.

## Background

The complainant testified that during the summer after her kindergarten year of school, she, while out riding her bicycle, stopped to help appellant "clean his car." When he asked her whether she wanted a soda, she responded "yes."  Appellant then "took [her] to go upstairs," "told [her] to take off [her] pants," "made [her] lay down," and then "put his middle part inside of [her] middle part."  The complainant identified her "middle part" as "the vagina" and appellant's "middle part" as "the male sexual organ, the penis."  She explained that appellant was "on top of [her]," she was "facing up at the ceiling," and it "hurt."  The complainant then "told [appellant] that [her] mom was calling [her]," "pulled [her] pants up," and left.

The complainant explained that when she got home she did not tell her mother or grandmother about what had happened because she was scared and "didn't want to get in trouble."  Later, while she visiting her father in New York, she told her sister and father "somebody did something bad" to her.

---

[2]     *See* U.S. CONST. amends. VI, XIV.

Teresa Santos, a licensed clinical social worker, testified that during the summer of 2010, she served as "[a] forensic interviewer at the child advocacy center at [the] Montefiore Medical Center" in New York. On July 12, 2010, she met with the complainant, who was six years old at the time. The complainant discussed with Santos events that had occurred earlier that summer in Houston, Texas, "around the time school ended." The complainant told her that while "she was outside riding her bicycle," a man "offered her a soda." However, the man "tricked" her and took her to "his living room" "[i]n his apartment." The man then "pulled [her] shorts down and [her] panties down," "put [her] down" on the ground, and "put his wiener in [her] butt." Santos noted that the complainant identified "the male sexual organ" as his "wiener" and both her "butt" and "bottom" as her anus. The complainant explained that at "[f]irst it was soft, then it was hard" and "felt bad." She also told Santos that the man "touched [her] on [her] bottom." In order to "get out" of the man's apartment, the complainant told him that her mom was calling her, and "he let [her] go." The complainant identified the man as "Santos" and explained that "[h]e lived in the same [apartment] buildings" that she lived in.

The complainant's father testified that the complainant was six years old when she visited him in New York in July 2010. He explained that while she was visiting, "[s]he told [him] about a man named Santos that was a friend of her mother's . . . that took her upstairs . . . to give her candy . . . . And he told her that it was not going to

3

hurt and he did what he had to do." When her father asked her what the man did, the complainant told him that the man "took her from behind, that he turned her around and took her from behind. And that's when she felt pain." More specifically, the complainant told him that the man "put his private on her" and "his private touched" "her front and behind" "[p]rivate parts." To get away, the complainant "told [the man] that her mother was calling her." She identified the man by his name, "Santos," and said that he was a "neighbor."

Houston Police Department ("HPD") Officer K. Estrada, assigned to HPD's juvenile division sex crimes unit in 2010, testified that she handled the complainant's case. According to Estrada, the complainant, during her forensic interview in New York, gave appellant's first name and stated "where he was living." Later, after the complainant returned to Houston, she identified appellant in a photographic array prepared by Estrada. Estrada explained that during her investigation of the case, "it was discovered that [the complainant] had [genital] warts on her anus." Although Estrada was unable to "connect [appellant's] DNA with [the complainant]" and he denied "all . . . criminal conduct," he did admit to knowing the complainant.

Linda Cahill, a pediatrician at the child advocacy center at Montefiore Medical Center in New York, testified that while examining the complainant, she saw "lesions on [her] anus consistent with ano-genital warts"—a "common" sexually-transmitted disease, which can be transmitted either through the birth canal

4

during birth or "through direct sexual contact" with another person. Because the complainant did not "manifest[] . . . warts" until six years of age, Cahill opined that she "acquired" the sexually-transmitted disease "after birth" "through direct sexual contact" with another person. Cahill also opined that the complainant is a victim of sexual abuse.

The complainant's mother testified that she did not have any "warts" or "sexually transmitted diseases at the time [she] gave birth to [the complainant]." And she explained that the complainant did not have any sexually-transmitted diseases or "warts" "before the summer of 2010."

**Standard of Review**

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Tarley v. State*, 420 S.W.3d 204, 206 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). Likewise, we review a trial court's decision to limit cross-examination under an abuse-of-discretion standard. *Mims v. State*, 434 S.W.3d 265, 271 (Tex. App.— Houston [1st Dist.] 2014, no pet.); *Ho v. State*, 171 S.W.3d 295, 304 (Tex. App.— Houston [14th Dist.] 2005, pet. ref'd). A trial court abuses its discretion if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *see also Tarley*, 420 S.W.3d at 206.

5

## Cross-Examination

In his sole issue, appellant argues that the trial court erred in limiting his cross-examination of the complainant's father, a State's witness, regarding "a custody battle between the complainant's parents" because it deprived him of his right to present a defense.[3]

The United States Constitution guarantees a defendant a meaningful opportunity to present a complete defense and the right to cross-examine witnesses. U.S. CONST. amends. VI, XIV; *see also Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986); *Delaware v. Van Arsdall*, 475 U.S. 673, 678–79, 106 S. Ct. 1431, 1435 (1986); *Carroll v. State*, 916 S.W.2d 494, 496–98 (Tex. Crim. App.

---

[3] We note that the State, in its brief, asserts that appellant has not preserved this complaint for appellate review. On appeal, "there is a distinction between [a] situation where [a] defendant desires to elicit certain, specific responses from a State's witness but is precluded from doing so" and a situation "where [a] defendant is not permitted to question a State's witness about a certain general subject that might affect the witness's credibility." *Virts v. State*, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987). To preserve error when the trial court excludes certain, specific responses, "it is incumbent upon the defendant to either" have the witness answer the questions on the record or "make an offer of proof of the questions he would have asked and the answers he might have received had he been permitted to question the witness in the presence of the jury." *Koehler v. State*, 679 S.W.2d 6, 9 (Tex. Crim. App. 1984). In contrast, when a trial court deprives a defendant of the opportunity to cross-examine a witness on a subject affecting the credibility of the witness, the defendant "must merely establish what subject matter he desired to examine the witness about during the cross-examination." *Id.* Here, due to our disposition of appellant's sole point of error, we need not address whether appellant has preserved his complaint for our review. *See* TEX. R. APP. P. 47.1; *see also Montgomery v. State*, 383 S.W.3d 722, 728–29 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (declining to address whether defendant preserved complaint regarding trial court's alleged improper limitation of cross-examination of witness).

1996). However, although a defendant's right to confrontation and cross-examination is constitutionally safeguarded, it is not absolute. *See Van Arsdall*, 475 U.S. at 678–79, 106 S. Ct. at 1435; *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S. Ct. 1038, 1046 (1973).

A defendant may cross-examine a witness on any subject reasonably calculated to attack his credibility, such as exposing a motive, bias, or interest. *See* TEX. R. EVID. 611(b); *see also Carroll*, 916 S.W.2d at 497–98; *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998) (exposing witness's motivation to testify for or against defendant proper and important purpose of cross-examination). However, a trial court is afforded "considerable discretion in determining how and when bias may be proved, and what collateral evidence is material for that purpose." *Recer v. State*, 821 S.W.2d 715, 717 (Tex. App.—Houston [14th Dist.] 1991, no pet.); *see also Virts v. State*, 739 S.W.2d 25, 28 (Tex. Crim. App. 1987) ("The trial judge retains wide latitude to impose reasonable limits on cross-examination . . . ."). For instance, a trial court has the discretion to limit the scope of cross examination "to avoid . . . harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence." *Lagrone v. State*, 942 S.W.2d 602, 613 (Tex. Crim. App. 1997); *see also Van Arsdall*, 475 U.S. at 679, 106 S. Ct. at 1435 ("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based

7

on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.").

In his brief, appellant appears to argue that the trial court's error in limiting his cross-examination of the complainant's father was constitutional error because evidence regarding the "custody battle" between the complainant's parents could have shown "motive for [the complainant's father's] testimony and the allegations [made] against [a]ppellant." For purposes of our analysis, we will assume that appellant is correct that the alleged error in this case is constitutional error. *See* TEX. R. APP. P. 44.2(a); *see also Clark v. State*, 365 S.W.3d 333, 340 (Tex. Crim. App. 2012) ("[C]onstitutional error is subject to a much stricter harm analysis on appeal."); *Dees v. State*, Nos. 02-12-00488-CR, 02-12-00489-CR, 2013 WL 6869865, at *6 n.6 (Tex. App.—Fort Worth Dec. 27, 2013, pet. ref'd) (mem. op., not designated for publication) (because appellate court determined defendant not harmed under constitutional-error analysis, no need to "conduct a less intensive nonconstitutional harm analysis for the trial court's [alleged] error in excluding the complained-of evidence").

The United States Supreme Court and the Texas Court of Criminal Appeals have held that a harmless-error analysis applies when a trial court improperly limits a defendant's cross-examination of a witness in violation of the Confrontation

Clause. *See Van Arsdall*, 475 U.S. at 684, 106 S. Ct. at 1438; *Shelby v. State*, 819 S.W.2d 544, 546–47 (Tex. Crim. App. 1991); *see also* TEX. R. APP. P. 44.2(a). Under this analysis, an appellate court must first assume that the damaging potential of the cross-examination was fully realized, and then determine whether the error was harmless beyond a reasonable doubt in light of the following factors: (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength of the prosecution's case. *Van Arsdall*, 475 U.S. at 684, 106 S. Ct. at 1438; *Shelby*, 819 S.W.2d at 547.

Here, appellant specifically complains about the following exchange, which occurred during his cross-examination of the complainant's father:

| [Appellant's attorney]: | May we approach, Your Honor? |
|---|---|
| THE COURT: | Yes. |
| (At the bench, on the record.) | |
| [Appellant's attorney]: | Now, Your Honor, there's -- in the offense report where they talk to this man, basically she -- there's a custody battle going on. |
| THE COURT: | At what point? |
| [Appellant's attorney]: | After his knowledge of this. |
| THE COURT: | Okay. After all this, okay. |

9

| | |
|---|---|
| [Appellant's attorney]: | Yes, yes. So they're fighting for custody and they set up a custody hearing. There's a -- there was a hearing set to determine -- |
| [State's attorney]: | Can you whisper? |
| [Appellant's attorney]: | Yes. There was a custody hearing to determine where the child was going to be in general. Well, he didn't show up and basically he said he didn't show up because the mother threatened to have him killed. |
| [Appellant's attorney]: | No, he just -- |
| (inaudible). | |
| THE COURT REPORTER: | I can't hear you . . . . |
| THE COURT: | I don't think he wants it on the record. |
| [Appellant's attorney]: | Okay. So there was a custody hearing. |
| [State's attorney]: | Can you whisper? |
| [Appellant's attorney]: | Okay. Sorry. There was a custody hearing, and, you know, he didn't show up to the custody hearing so she got custody to bring the child back to Texas but he also -- she asked the investigator if she could put a protective order against him because he was threatening to kill the mom, so -- but -- |
| THE COURT: | That's not coming in here. |
| [Appellant's attorney]: | Okay. That's why I approached. |

10

| | |
|---|---|
| THE COURT: | Okay. And my understanding is she's on the witness list also, right? |
| [Appellant's attorney]: | Yeah. |
| THE COURT: | No, that's not coming in at this point. |
| [Appellant's attorney]: | Okay. All right. Thank you, Your Honor. |

(End of discussion at the bench.)

We need not address whether the trial court erred in limiting appellant's cross-examination of the complainant's father about the "custody battle" between the complainant's parents because, even were we to conclude that the trial court erred, appellant has failed to establish harm. *See* TEX. R. APP. P. 47.1; *see also Collazo v. State*, No. 04-12-00004-CR, 2013 WL 3279268, at *3–4 (Tex. App.—San Antonio June 26, 2013, no pet.) (mem. op., not designated for publication) (declining "to address whether the trial court erred in limiting the cross-examination . . . because [the appellate court] h[e]ld that any such error would be harmless beyond a reasonable doubt"); *Mole v. State*, No. 2-08-021-CR, 2009 WL 1099433, at *10–11 (Tex. App.—Fort Worth Apr. 23, 2009, pet. ref'd) (mem. op., not designated for publication) ("[A]ssuming without deciding that the trial court abused its discretion by prohibiting cross-examination of [the witness] regarding the internal investigation against him, we will perform the required harm analysis.").

11

In conducting our harm analysis, we focus on the testimony of the complainant's father and assume that the damaging potential of the cross-examination was fully realized. *See Shelby*, 819 S.W.2d at 547, 550. In other words, we assume that the jury was fully informed of the "custody battle between the complainant's parents" and that it constituted "motiv[ation] for [the complainant's father's] testimony and the allegations [made] against [a]ppellant"; we then apply the factors delineated in *Van Arsdall* and *Shelby*. *See Van Arsdall*, 475 U.S. at 684, 106 S. Ct. at 1438; *Shelby*, 819 S.W.2d at 547, 550–51.

The complainant's father testified that the complainant, while visiting him in New York, told him "about a man named Santos," a friend of her mother and a neighbor, who "took her upstairs" and "put his private on her." The complainant also told her father that the man's "private touched" "her front and behind" "[p]rivate parts."

In regard to the importance of the testimony of the complainant's father to the State's case and the cumulativeness of the testimony, we note that the same events that were described by the complainant's father were also discussed, in significantly more detail, by the complainant herself and Santos, the licensed clinical social worker who interviewed the complainant after she reported the sexual assault.

Further, at trial, the complainant identified appellant as the man who had sexually assaulted her, and both Santos and Officer Estrada, the lead investigator

12

handling the case, also testified that the complainant had identified appellant as the man who had sexually assaulted her. The testimony of the complainant's father merely reiterated what the complainant, Santos, and Estrada testified to at trial. In other words, the testimony of the complainant's father was cumulative and not vital to the State's case. *See, e.g.*, *Brown v. State*, Nos. 14-12-00833-CR, 14-12-00834-CR, 2014 WL 5308790, at *7 (Tex. App.—Houston [14th Dist.] Oct. 16, 2014, pet. ref'd) (mem. op., not designated for publication) (testimony "not essential because it was largely cumulative" of other witnesses' testimony); *Ramos v. State*, No. 01-12-00957-CR, 2014 WL 50812, at *11 (Tex. App.—Houston [1st Dist.] Jan. 7, 2014, no pet.) (mem. op., not designated for publication) (witness's testimony "largely the same as that of the complaining witness"); *Montgomery v. State*, 383 S.W.3d 722, 728–29 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (error harmless beyond reasonable doubt where "testimony was not very important to the State's case" and "was cumulative of other evidence before the jury").

In regard to the presence or absence of evidence corroborating or contradicting the testimony of the complainant's father on material points, the complainant's testimony corroborated much of her father's testimony as did the testimony of Santos and Officer Estrada; and the only evidence that contradicted the testimony of the complainant's father was Estrada's testimony that appellant denied "all . . . criminal conduct." *See, e.g.*, *Bradshaw v. State*, No. 04-11-00173-CR, 2012

13

WL 1648218, at *4 (Tex. App.—San Antonio May 9, 2012, pet. ref'd) (mem. op., not designated for publication) ("[A]ny error the trial court may have made in limiting cross-examination" of witness harmless where other witness's testimony provided corroboration).   And, although appellant was not permitted to fully cross-examine the complainant's father about the "custody battle between the complainant's parents," he was otherwise permitted to cross-examine the complainant's father, and he did elicit the following:

| [Appellant's attorney]: | . . . Now, while you were living in New York, was there a -- were you fighting for custody for [the complainant]? |
|---|---|
| [The complainant's father]: | No, that was afterwards. |
| [Appellant's attorney]: | Okay.  After what? |
| [The complainant's father]: | After what happened here. |

Further, appellant was permitted to ask the complainant's mother questions about the "custody battle" during his cross-examination of her.  *See, e.g.*, *Dees*, 2013 WL 6869865, at *7–9 (defendant "had ample opportunity to cross-examine the [witness] and present his defensive theory to the jury"); *Smith v. State*, 236 S.W.3d 282, 294–95 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (any error harmless where defendant "was otherwise permitted to fully cross-examine" witness).

Finally, we note that the State's case against appellant was strong, even without the testimony of the complainant's father.  The complainant testified that

while she was out riding her bicycle, she stopped to help appellant "clean his car." He then asked her whether she wanted a soda. When she said that she did, appellant "took [her] to go upstairs," where he "told [her] to take off [her] pants," "made [her] lay down," and then "put his middle part inside of [her] middle part." Appellant was "on top of [the complainant]," she was "facing up at the ceiling," and it "hurt."

Santos testified that the complainant told her that while "she was outside riding her bicycle," a man named "Santos," who "lived in the same [apartment] buildings" that she lived in, "offered her a soda." However, he "tricked" her and took her to "his apartment," where he "pulled [her] shorts down and [her] panties down," "put [her] down" on the ground, and "put his wiener in [her] butt."

Further, Officer Estrada testified that after the complainant returned to Houston, she, from a photographic array prepared by Estrada, identified appellant as the man who had sexually assaulted her. And Cahill, the pediatrician who examined the complainant after the sexual assault was reported, testified that the complainant had "lesions on [her] anus consistent with ano-genital warts"—a "common" sexually-transmitted disease. And because the complainant did not "manifest[] . . . warts" until six years of age, Cahill opined that she "acquired" the sexually-transmitted disease "after birth" "through direct sexual contact" with another person. *Cf. Brown*, 2014 WL 5308790, at *7 ("Even excluding [witness's] testimony," "jury heard compelling testimony of the altercation" from other

15

witnesses "who[] testified consistently on the material points."); *Ramos*, 2014 WL 50812, at \*11 ("The State's case was strong" where "there was . . . testimony from the complaining witness.").

Based on the foregoing factors, focusing on the testimony of the complainant's father, and assuming the jury had been fully informed about the "custody battle between the complainant's parents" and that it constituted "motiv[ation] for [the complainant's father] testimony and the allegations [made] against [a]ppellant," we hold that any error of the trial court in not allowing appellant to fully cross-examine the complainant's father about the "custody battle" was harmless beyond a reasonable doubt. *See Van Arsdall*, 475 U.S. at 684, 106 S. Ct. at 1438; *Shelby*, 819 S.W.2d at 550–51.

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Keyes, and Bland.

Publish. TEX. R. APP. P. 47.2(b).