

# NUMBER 13-16-00034-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**WILLIAM KYLE ANDERSON,**                                           **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                           **Appellee.**

---

### On appeal from the 40th District Court
### of Ellis County, Texas.

---

# MEMORANDUM OPINION
### Before Justices Rodriguez, Benavides, and Longoria
### Memorandum Opinion by Justice Benavides

Appellant William Kyle Anderson appeals his conviction for continuous sexual abuse of a young child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 21.02 (West, Westlaw through 2017 1st C.S.). By three issues, Anderson asserts: (1) the evidence is legally insufficient to support his conviction; (2) the trial court abused its discretion when it limited his ability to cross-examine a witness; and (3) the trial court abused its discretion when it limited his expert witness's testimony. We affirm.

## I. BACKGROUND[1]

Anderson is complainant K.A.'s biological father.[2] K.A., who was eight years old at the time of trial, testified that she was "four or five" years old when she and her younger sister Y.A. lived with Anderson. K.A. recalled that she lived with Anderson in two houses at different times.

K.A. called the first house "the Bridge House" because it was located near a bridge in Bardwell, Texas. She recalled that one night at the Bridge House, Anderson, K.A., and Y.A. were in Anderson's room watching television, but only Anderson and K.A. were awake. K.A. recalled that the television depicted adults doing "inappropriate stuff" such as a man "touching" a girl's "private" with his mouth as she sat on a bench.[3] K.A. testified that as the video played on the television, Anderson was lying flat on the edge of the bed in his underwear. K.A. then proceeded to lie on top of Anderson's "private," while still wearing her nightgown, but without wearing underwear. K.A. explained that at that moment, her "private" touched his "private." Next, K.A. testified that Anderson placed his hands on her hips, while she placed her hands on his chest to hold herself up, and Anderson began moving her around slowly until she felt "wetness" on his chest. K.A. testified that when she asked Anderson why his chest was wet, he told her that he had spilled his beer on it. K.A. stated that she felt a "little bit" of pressure when she sat on top

---

[1] This appeal was transferred from the Tenth Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.).

[2] We will utilize initials for the complainant and other parties involved throughout the opinion in order to protect the minor's identity. *See generally* TEX. R. APP. P. 9.8 (Protection of Minor's Identity in Parental-Rights Termination Cases and Juvenile Court Cases).

[3] The record revealed that K.A. identified a "private part" or "private" as the respective male and female sexual organs.

of Anderson and described his "private part" as the same color as his skin with "a little" bit of hair on it. K.A. also recalled that Anderson touched her "private part" with his "private" on another occasion at the Bridge House.

K.A. testified that she, Anderson, Y.A., and a nanny lived in a house in Ennis. At the Ennis house, K.A. shared a room with Y.A., Anderson had his own bedroom, and the nanny had her own bedroom. K.A. testified that one day, she sat on Anderson's lap as he sat in his chair, and he began to rub her "private" over her panties. K.A. recalled another incident in which she was lying in bed while Y.A. showered. As she lay in bed, Anderson sat in his rolling chair, rolled closer to the bed, pulled her underwear down, and started touching her "private" with his fingers. K.A. told jurors that Anderson's finger went "inside [of her] private part" when he asked her whether it felt good, and K.A. replied in the affirmative. K.A. stated that Anderson then stopped because Y.A. needed help in the shower. K.A. reiterated that Anderson rubbed her "private part" with his finger "several times" at both the Bridge House and the house in Ennis.

Later in her testimony, K.A. demonstrated for the jury the incidents to which she testified using male and female dolls. K.A. testified that although Anderson told her not to tell anyone about any of the incidents, she later told her mother and grandmother. K.A. testified that one day, without being asked, she told her mother, C.W., that she wanted to tell her a secret because it "just popped in [her] head." K.A. testified that she told C.W. about the incidents involving Anderson.

C.W. testified that one afternoon in August 2013 while visiting her mother, K.A. began massaging C.W.'s back, after a day of gardening outside of the house. During the massage, K.A. told C.W. that she wanted to tell her a secret that K.A. shared with

3

Anderson. According to C.W., K.A. was initially embarrassed to tell her the secret. At that point, C.W. asked K.A. whether her dad had massaged her butt, and K.A. said "no . . . the other side" and pointed to her "tee-tee."[4] After learning this information, C.W. told her mother. C.W. then asked K.A. to share her secret again with C.W.'s mother, and K.A. complied.

M.W., K.A.'s grandmother and C.W.'s mother, testified that K.A. told her that "she and her dad had a special secret." Specifically, M.W. testified that K.A. told her that Anderson "had rubbed her tee-tee" and "put his fingers in her." M.W. stated that K.A. told her that it happened "every day" but that "if she didn't want to do it, she would let him know that she didn't want to do it and she didn't have to do it." Shortly thereafter, C.W. and M.W. called the Ennis Police Department to report what they had learned.

Brenda Crawford, a sexual-assault nurse examiner (SANE) at Cook Children's Hospital in Fort Worth, testified that she examined K.A. shortly after M.W. and C.W. reported what they had learned to police. Crawford testified that K.A. told her that Anderson had rubbed her vagina over her clothes. K.A. confirmed to Crawford that Anderson's penis touched her vagina and that he touched her vagina.

Teresa Evans, a forensic interviewer at the Ellis County Children's Advocacy Center, also known as "the Gingerbread House," testified that she interviewed K.A. in August 2013. Evans stated that during the interview, K.A. used anatomically-correct dolls to demonstrate what she claims happened to her. According to Evans, K.A. positioned the male doll lying down with his pants and underwear down to his knees, and positioned the female doll on top of the male doll, with the female doll's underwear pulled down. K.A.

---

[4] C.W. testified that K.A. referred to her female sexual organ as her "tee-tee."

4

told Evans that she observed that Anderson's chest was wet, but that he explained that he had spilled beer on it. According to Evans, K.A. stated that the same incident happened again at another point in time. K.A. described Anderson's genitals as "peach" in color with "a little hair on it" and stated that it felt "like a little pokey thing." Evans testified that she also interviewed Y.A., but Y.A. did not make any allegations of sexual abuse.

Lastly for the State, Detective Mark Mahoney of the Ennis Police Department testified that he took over the investigation in this case and ultimately executed an arrest warrant on Anderson. According to Detective Mahoney, he interviewed Anderson three times, and each time, he was emotional, but denied any of the allegations.

Anderson's sole defense witness was expert Aaron Pierce, Ph.D, a licensed professional counselor and licensed sex offender treatment provider. Dr. Pierce offered opinions about false allegations in sexual abuse in children, the signs and symptoms of sexual abuse, and the concept of stereotype inducement, which can lead to misinterpretation of innocent acts.

After a five-day trial, an Ellis County jury convicted Anderson as charged and assessed his punishment at fifty years' imprisonment with the Texas Department of Criminal Justice—Institutional Division. This appeal followed.

## II. SUFFICIENCY CHALLENGE

By his first issue, Anderson asserts that the evidence is legally insufficient to sustain his conviction.

### A. Standard of Review and Applicable Law

In reviewing sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict and determine whether, based on

5

that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). In viewing the evidence in the light most favorable to the verdict, we defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *Brooks*, 323 S.W.3d at 899.

It is unnecessary for every fact to point directly and independently to the guilt of the accused; it is enough if the finding of guilt is warranted by the cumulative force of all incriminating evidence. *Winfrey*, 393 S.W.3d at 768. In our sufficiency review, direct and circumstantial evidence are treated equally—that is, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The elements of the offense are measured as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id*.

Under a hypothetically correct jury charge in this case, Anderson is guilty of continuous sexual abuse of a young child, if: (1) during a period that is 30 or more days in

6

duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and (2) at the time of the commission of each of the acts of sexual abuse, the actor is seventeen years of age or older and the victim is a child younger than fourteen years of age, regardless of whether the actor knows the age of the victim at the time of the offense. *See* TEX. PENAL CODE ANN. § 21.02(b) (West, Westlaw through 2017 1st C.S.). For purposes of this section, "act of sexual abuse" is any act that violates, among other penal laws: (1) indecency with a child, *see id.* § 21.11 (West, Westlaw through 2017 1st C.S.); (2) sexual assault, *see id.* § 21.011 (West, Westlaw through 2017 1st C.S.); and (3) aggravated sexual assault, *see id.* § 22.021 (West, Westlaw through 2017 1st C.S.). With regard to the "30 or more days" requirement, although the exact dates of the abuse need not be proven, the offense of continuous sexual abuse of a child does require proof that there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration. *Baez v. State*, 486 S.W.3d 592, 595 (Tex. App.—San Antonio 2015, pet. ref'd).

### B. Discussion

Anderson solely challenges the sufficiency of the evidence with regard to when any of the sexual acts may have occurred to constitute a period that was 30 or more days in duration. *See* TEX. PENAL CODE ANN. § 21.02(b)(1).

C.W. testified that Anderson took full-time custody of K.A. and Y.A. in December 2012 while he lived at the Ennis house until school started in "August, September" of 2013. According to C.W., prior to that, while living at the Bridge House, Anderson had standard visitation with K.A. and Y.A. every first, third, and fifth weekend of the month. M.W. said that K.A. was "about four years old, maybe five" in 2011, when Anderson lived at the Bridge

7

House. K.A. testified that more than once, Anderson abused her at the Bridge House, and she also testified that more than once, Anderson abused her at the Ennis house. M.W. testified that K.A. told her that while living at the Ennis house, Anderson had rubbed her "tee-tee" with his finger "every day" that she lived with him, unless she did not want to do it.

After considering all of the evidence in the light most favorable to the verdict, we conclude that based on that evidence and reasonable inferences therefrom, a rational fact finder could have found beyond a reasonable doubt that Anderson committed two or more acts of sexual abuse against K.A. during a period that is 30 days or more in duration. *See Winfrey*, 393 S.W.3d at 768; *see also* TEX. PENAL CODE ANN. § 21.02(b)(1). We overrule Anderson's first issue.

### III. LIMITATION ON CROSS EXAMINATION

By his second issue, Anderson asserts that the trial court erred by improperly limiting his ability to cross-examine C.W.

### A. Standard of Review and Applicable Law

We review a trial court's decision to limit cross-examination under an abuse of discretion standard. *See Cruz-Escalante v. State*, 491 S.W.3d 857, 860 (Tex. App.—Houston [1st Dist.] 2016, no pet.). A trial court abuses its discretion if its decision is so clearly wrong as to lie outside the zone within which reasonable people might disagree. *See id.*

Although a defendant is guaranteed a right to present a complete defense and cross-examine witnesses, such rights are not absolute. *See id.* Cross-examination serves three general purposes: cross-examination may serve to identify the witness with his

8

community so that independent testimony may be sought and offered concerning the witness' reputation for veracity in that community; cross-examination allows the jury to assess the credibility of the witness; and, cross-examination allows facts to be brought out tending to discredit the witness by showing that his testimony in chief was untrue or biased. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). However, a trial court is afforded considerable discretion in determining how and when bias may be proved, and what collateral evidence is material for that purpose. *Cruz-Escalante*, 491 S.W.3d at 860 (internal quotations and citations omitted). For example, some examples of when a trial court may limit cross-examination include when a subject is exhausted, when the cross-examination is designed to annoy, harass, or humiliate, or when the cross-examination might endanger the personal safety of the witness. *See Carroll*, 916 S.W.2d at 497.

## B.    Discussion

Anderson argues that the trial court erred by not allowing him to cross-examine C.W. about her own past sexual assault as a child by a family member. Anderson specifically argues that he sought to cross-examine C.W. on this topic in order to "demonstrate [C.W.] was hypersensitive to the issue of sexual assault [as] it related to the seemingly innocent touching of a child's private parts." Anderson further argues that the purpose of this line of questioning was not to question C.W.'s credibility, but instead related to showing C.W.'s "bias and interest" in K.A.'s allegations.

During a hearing outside the presence of the jury, C.W. testified that at age three, she was sexually abused on one occasion by her maternal uncle. Anderson sought to elicit this same testimony before the jury, in order to tie it to Dr. Carter's testimony that an adult who has been sexually abused as a child might be "hypersensitive" to child sex

9

abuse.  In making its ruling, the trial court found such cross-examination irrelevant, but the trial court further ruled that even if such questioning was relevant, it would have been unfairly prejudicial and would confuse the issues.

Based on this record, we conclude that the trial court acted within its discretion in not allowing Anderson to cross-examine C.W. about her own past experience of sexual abuse at age three, after finding such testimony irrelevant, or in the alternative, if relevant, was unfairly prejudicial and would confuse the issues in the case.  *See Cruz-Escalante*, 491 S.W.3d at 860; *Carroll*, 916 S.W.2d at 497;

We overrule Anderson's second issue.

### IV.    LIMITATION OF EXPERT WITNESS TESTIMONY

By his third and final issue, Anderson asserts that the trial court erred by limiting his defense expert's testimony.

### A.    Standard of Review

We review a trial court's determination regarding qualifications of an expert witness and admissibility of expert testimony for an abuse of discretion.  *See Ellison v. State*, 201 S.W.3d 714, 723 (Tex. Crim. App. 2006).  Absent a clear abuse of that discretion, the trial court's decision to admit or exclude testimony will not be disturbed.  *Id.*

### B.    Discussion

Anderson sought to elicit testimony from his expert, Dr. Aaron Pierce, regarding C.W.'s responses to the Trauma System Checklist for Young Children (TSCYC) as it related to K.A.  According to Dr. Pierce, TSCYC is "used to determine the presence of trauma symptoms" in children and "the severity of those symptoms."  According to Dr. Pierce, parents will fill out the checklist about their child following a traumatic event such

10

as sexual abuse.  In this case, Dr. Pierce testified outside the presence of the jury that it is possible that a parent who had been previously sexually abused as a child would be hypersensitive to their own child's alleged abuse and over report on the TSCYC.

In addition to excluding testimony concerning C.W.'s sexual abuse experience as a child, the trial court also excluded expert testimony with respect to the TSCYC.  The trial court noted that C.W.'s TSCYC report was not even available and included in the record.

Based on this record, we conclude that the trial court did not abuse its discretion by excluding any testimony from Dr. Pierce regarding C.W.'s TSCYC report because any relationship to the report and C.W.'s own sexual abuse history was irrelevant, as discussed earlier in this opinion, and further, the report itself was not available for the jury to review. *See id.*

Accordingly, we overrule Anderson's third issue.

**V.  CONCLUSION**

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
2nd day of November, 2017.