

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00352-CR
_____

ODELL HALL, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court No. 1361935D

Before Walker, Meier, and Gabriel, JJ.
Memorandum Opinion by Justice Meier

## MEMORANDUM OPINION

Appellant Odell Hall appeals from his conviction for aggravated assault with a deadly weapon (a knife) and resulting sentence of thirty-five years' confinement. *See* Tex. Penal Code Ann. § 12.42(d) (West Supp. 2018), § 22.02(a)(2) (West 2011). He raises two points of error. First, while conceding that the evidence is sufficient to support a conviction for simple assault, Hall challenges his conviction for aggravated assault, arguing that the evidence is legally insufficient to support the jury's implied finding that he used or exhibited a deadly weapon during the assault. *Compare id.* § 22.01(a)(1) (West Supp. 2018) (simple assault causing bodily injury), *with id.* § 22.02(a)(2) (aggravated assault with a deadly weapon). Second, Hall argues the trial court violated the Sixth Amendment by limiting his cross-examination of the complainant. We will affirm.

## I. BACKGROUND

On March 8, 2014, Shawn Begley called 911 and reported that two individuals had been in a fight on the train platform at the Intermodal Transportation Center (ITC) in downtown Fort Worth. Begley stated that after the fight had broken up, the two individuals involved had boarded separate train cars. He also said that someone else on the train had reported that one of the individuals who had been involved in the fight had a knife. Begley requested police assistance.

Officer John Delahunty and his partner, Officer Thomas DeLong, both of whom were assigned to the Fort Worth Police Department's downtown bike unit,

were dispatched to the ITC for a fight involving a knife. Duane Reed, an on-site ITC security officer, was also notified of the disturbance, and he likewise went to investigate. Reed spoke with both individuals who had been involved in the fight, Taevionndre Haywood and Hall. While speaking with Hall, Reed noticed that his finger was badly cut, to the point of being "practically severed." After speaking with Hall, Reed began searching the premises for a knife.

By the time Officer Delahunty and Officer DeLong arrived on scene, at least one ambulance had responded to the scene, and all of the trains had left the station. Officer Delahunty interviewed Haywood, while Officer DeLong spoke with Hall. While interviewing Haywood, Officer Delahunty noted that he appeared to be in pain. Haywood told Officer Delahunty that he had been stabbed, something he had not realized until he had gotten on the train after the scuffle with Hall. Both Haywood and Hall were transported to the hospital because of their injuries. Officer Delahunty and Officer DeLong also went to the hospital to continue their investigation.

Based upon the information Officer Delahunty and Officer DeLong had learned during their investigation, Officer DeLong—who, along with Officer Delahunty, was still at the hospital—radioed other officers to request that they search for a black-handled folding knife back at the ITC. Although the other officers conducted a search for the knife throughout the ITC, they never located it. According to Haywood's medical records related to the fight, which were introduced into evidence at trial, Haywood had been stabbed twice with a knife.

Haywood testified at trial. At the time of the altercation with Hall, Haywood lived in Fort Worth but worked in Dallas, so he commuted to and from work by way of the train. On March 8, 2014, Haywood stopped to eat at a Subway restaurant near the train station before catching his train to Dallas for work. After he finished eating, Haywood left the restaurant and began making his way to the train platform to wait on his train. In doing so, he had to move through a crowd of people who were standing around, and as he moved past individuals in the crowd, he would politely say, "Excuse me." As he was moving through the crowd, Haywood came upon Hall, and as Haywood was trying to move past Hall, Haywood said to Hall, "Excuse me, sir."

Hall began directing profanity toward Haywood. Haywood attempted to walk away, but Hall walked toward him, and Hall's profanity grew louder. Haywood asked Hall, "Is there a problem?" and Hall said to Haywood, "I'm talking to you, bitch," and "I'll fuck you up." Hall began pushing Haywood, nearly forcing him onto the train tracks, so Haywood pushed Hall away from him in an effort to keep Hall away. Hall started punching Haywood, delivering blows in the area of his lower pelvis, and then some bystanders intervened and broke up the altercation.

Haywood proceeded to get on his train because he did not want to be late for work and did not realize that he had been injured. Once he got on the train, however, he began to feel pain in his lower pelvis, and when he lifted his shirt, he saw that he had been stabbed twice. Haywood stated that he never saw the object Hall used to stab him because the incident happened too fast. But Haywood also testified that at

4

the time of the scuffle, he did not have a weapon on his person, did not have a weapon in his backpack, did not have anything sharp in his backpack, and did not have anything sharp in his pockets. The stab wounds Haywood received punctured his colon, which required him to undergo abdominal surgery.

## II. SUFFICIENT EVIDENCE SUPPORTS THE JURY'S IMPLIED DEADLY-WEAPON FINDING

In his first point, Hall argues that the evidence is insufficient to support his conviction for aggravated assault. He concedes that the evidence is sufficient to support a conviction for simple assault. But he contends that there is insufficient evidence to support the jury's implied finding that he used or exhibited a deadly weapon when assaulting Haywood. And he asks that we reverse his conviction for aggravated assault, render a judgment of conviction for the lesser-included offense of assault, and remand this case to the trial court for a new punishment trial.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic

5

facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jenkins*, 493 S.W.3d at 599.

In a nutshell, Hall's argument is that because there was no direct evidence that he used or exhibited a knife during the assault, the evidence is insufficient to support a finding that he used or exhibited a knife during the assault. For instance, Hall states that the record is devoid of evidence that he ever stated that he had a knife during the fight with Haywood. He points out that nobody, including Haywood, testified that they saw him with a knife. He notes that nobody found a knife on the ITC premises. And he highlights that the State did not present security camera footage of the attack itself. From all of this, Hall concludes that no rational trier of fact could have found beyond a reasonable doubt that he used or exhibited a knife during the assault of Haywood.

Hall's focus on the lack of direct evidence showing that he used or exhibited a knife during the assault is misplaced. "Direct and circumstantial evidence are treated equally: 'Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.'" *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). The standard of review in a circumstantial evidence case is the same as in a direct evidence case. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

The evidence admitted at trial showed that two individuals had been involved in a physical altercation at the ITC, that both individuals had boarded train cars after bystanders intervened and broke up the fight, and that other passengers on one of the train cars subsequently reported that one of the individuals who had been involved in the fight had boarded the train with a knife. The evidence also established that the two individuals involved in the fight were Hall and Haywood and that Hall had been the aggressor. Haywood testified that during the scuffle, he had felt Hall punch him in his lower pelvis and that after he boarded the train, he discovered two stab wounds in his lower pelvis. Haywood's medical records indicated he had been stabbed twice with a knife. And Haywood testified that he did not have a weapon or anything sharp on his person when the fight occurred.

There was also evidence that police were dispatched to the ITC specifically for a fight involving a knife. While they were making their way to the scene, Reed, an ITC security officer, spoke with Hall, noticed he had a badly cut, "practically severed" finger, and immediately began searching the premises for a knife. And after Officer Delahunty and Officer DeLong compared notes at the hospital concerning their investigation, Officer DeLong requested that other officers search the ITC premises specifically for a black-handled folding knife.

Viewed in the light most favorable to the verdict, we conclude that the above evidence is such that a rational trier of fact could have found beyond a reasonable doubt that Hall used or exhibited a knife during his assault of Haywood. Accordingly,

7

we hold that sufficient evidence supports the jury's implied finding that Hall used or exhibited a knife during the assault. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jenkins*, 493 S.W.3d at 599.

We overrule Hall's first point.

## III.  THE TRIAL COURT DID NOT VIOLATE THE CONFRONTATION CLAUSE WHEN IT LIMITED HALL'S CROSS-EXAMINATION

In his second point, Hall contends the trial court violated the Sixth Amendment's Confrontation Clause by limiting his cross-examination of Haywood.

### A.  THE EXCLUDED EVIDENCE

During the State's direct examination, Haywood testified that the correct spelling of his first name was "T-a-e-v-i-o-n-n-d-r-e." On cross-examination, Hall asked whether Haywood made a written statement after the altercation, and when Haywood replied that he did not remember, Hall showed him a document to refresh his recollection.[1] Upon seeing this document, Haywood testified he remembered that he had been told to write a witness statement and that the document Hall had shown him contained his written statement. Hall directed Haywood to the top portion of the written statement, which contained certain information related to Haywood's identity. In particular, Hall noted, and Haywood confirmed, that the top of the statement spelled Haywood's first name as "T-a-b-v-i-o-n-n-d-r-e."

---

[1]Hall did not introduce the document into evidence.

Haywood testified that the spelling of his first name on the witness statement was incorrect. He stated that a police officer had completed the portion of the witness statement where the identifying information appeared, that he had told the officer his name after the officer requested it, and that the officer wrote his name on the statement without asking him to spell it or to show any identification. Hall then showed Haywood a copy of the indictment, which showed the spelling of his first name as "T-a-b-v-i-o-n-n-d-r-e." Haywood testified that it was the first time he had seen the indictment, that the indictment's spelling of his first name was incorrect, and that he would have called someone to have the spelling corrected if he had seen the indictment prior to the trial.

Hall presented another document to Haywood, and Haywood testified the document appeared to be an active warrant. Haywood also testified that the warrant contained his name, including the correct spelling of his first name. The trial court then dismissed the jury to take up an issue outside of the jury's presence.

Outside the jury's presence, Hall told the trial court that having established Haywood provided identifying information to the police, he wanted to follow up regarding whether Haywood told the police that his name was "Tabvionndre" rather than "Taevionndre." Hall represented to the trial court that at the time of the 2014 altercation, Haywood had a warrant for his arrest out of Carrollton under the name of "Taevionndre Haywood," and Hall further stated that he had confirmed that warrant was still active as of the date of Haywood's testimony. Hall stated that he believed

9

Haywood gave incorrect identifying information to the police because he knew he had a warrant for his arrest.[2] Hall then stated that he believed "that a follow-up question is appropriate with regard to if [Haywood] told the police that his name was Tabvionndre as opposed to Taevionndre." Hall further stated that "[Haywood was] free to answer whether he did or didn't, whether it's yes or no, and then . . . the jury can decide, because the jury is the one who decides credibility." Hall argued he should be allowed to ask this question under the Sixth Amendment's Confrontation Clause. The State objected to the admissibility of this evidence on the ground that it was not relevant.

The trial court asked Hall whether any other identifying information in Haywood's statement was incorrect, and Hall replied that, "As far as I can tell, everything on his written statement is accurate except for his name at the top part" of the witness statement. The trial court also asked how Haywood spelled his name in the signature he placed on the witness statement. The State replied that "[i]t looks like he signed it Taevionndre. It doesn't look like there's a B. It looks like a T-A-E-V-I-O-N-N-D-R-E. That's what it looks like in his signature." Hall did not contradict the State's representation that Haywood's signature contained the proper spelling of his name. Instead, Hall again pointed to the top portion of the witness statement, stating,

---

[2]The alleged warrant was not introduced into evidence and does not appear in our record. We note, however, that the State's response during the bench conference indicates the warrant Hall referenced was a traffic warrant.

His name is written in very bold caps at the top. It's clear a "B" -- that the officer wrote a "B." Mr. Haywood did nothing to correct that misimpression. I would suspect that the officer said, "Do I have all your information correct? Read over that and look at it."

The trial court again asked whether Haywood's signature contained the correct spelling of his name. This time, Hall conceded that "[a]t the bottom, it looks like he signed it Taevionndre." The trial court then sustained the State's objection and told Hall that it would "not allow [him] to ask that question."

## B. APPLICABLE LAW

The Sixth Amendment grants defendants the right to confront witnesses against them. U.S. Const. amend. VI. This right includes the right to "cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying. This right is not unqualified, however; the trial judge has wide discretion in limiting the scope and extent of cross-examination." *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) (footnote omitted). The Confrontation Clause guarantees an opportunity for effective cross-examination but not for "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 294 (1985). We review a trial court's decision to limit cross-examination under an abuse-of-discretion standard. *Cruz-Escalante v. State*, 491 S.W.3d 857, 860 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

11

## C. ANALYSIS

Hall contends the trial court violated the Confrontation Clause when it barred him from asking whether Haywood intentionally gave the wrong spelling of his first name to the police officer who filled out the top portion of Haywood's witness statement.

During another portion of his cross-examination of Haywood that occurred before the ruling Hall challenges here, Hall had already elicited testimony from Haywood regarding whether he intentionally provided the officer with an incorrect spelling of his name. After Haywood acknowledged writing a witness statement, Hall questioned him specifically about the inconsistency between the correct spelling of his name and the way the police officer had written it on the witness statement. In response to that questioning, Haywood testified (1) that he had verbalized his name to the police officer, (2) that he had not spelled his name for the officer, (3) that the officer had not asked him how his name was spelled, (4) that the officer had not asked him for identification, and (5) that it was the officer who had written his name incorrectly on the witness statement.

Because all of this testimony had already been elicited, to then ask Haywood whether he intentionally gave the wrong spelling of his name to the police officer—the question the trial court precluded Hall from asking—would have been repetitive. And the Confrontation Clause does not compel a trial court to allow interrogation that is repetitive. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435

12

(1986); *see also McGowan v. State*, 188 S.W.3d 239, 242 (Tex. App.—Waco 2006, pet. ref'd) (noting that among the permissible reasons to limit cross-examination are "prevention of harassment, prejudice, confusion of the issues, harm to the witness and repetitive questioning"). Because the question Hall sought to ask Haywood was repetitive of testimony he had already elicited from Haywood, we conclude the trial court acted within its wide discretion when it limited Hall's cross-examination with respect to that question.

We overrule Hall's second point.

## IV.  CONCLUSION

Having overruled both of Hall's points, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Bill Meier
Bill Meier
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  November 1, 2018

13