

# NUMBER 13-16-00468-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**FERNANDO ESQUIVEL,**                                       **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                       **Appellee.**

---

## On appeal from the 103rd District Court
## of Cameron County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Contreras, and Benavides
### Memorandum Opinion by Justice Rodriguez

A jury found appellant Fernando Esquivel guilty of continuous sexual abuse of a

young child, D.E.,[1] a first-degree felony, and assessed punishment at seventy years in

---

[1] We refer to the complainant D.E. and her mother D.S. by their initials in order to protect the child's privacy. *Cf.* TEX. R. APP. P. 9.8(b) (mandating the use of aliases in parental-rights termination cases and juvenile cases).

the Texas Department of Criminal Justice-Institutional Division, without the possibility of parole. *See* TEX. PENAL CODE ANN. § 21.02(b), (h) (West, Westlaw through 2017 1st C.S.); *see also* TEX. GOV'T CODE ANN. § 508.145 (West, Westlaw through 2017 1st C.S.) (setting out that an inmate serving an offense under section 21.02 is not eligible for release on parole). The trial court sentenced Esquivel accordingly.

By eight issues, which we have reorganized, Esquivel contends: (1) the evidence is insufficient to support his conviction; and the trial court erred in (2) qualifying the complainant child witness, D.E., in the presence of the jury; (3) admitting D.E.'s video statement into evidence; (4-5) limiting the cross-examination of D.E. about her video statement and the cross-examination of D.S., the child's mother, about her affidavit for a protective order; (6) not admitting D.E.'s medical records into evidence; (7) granting the State's request for a jury instruction on a lesser-included offense; and (8) at the punishment phase, instructing the jury that Esquivel could be awarded time off for good conduct. We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

By his first issue, Esquivel contends that the evidence is insufficient to prove the element of continuous sexual abuse: that is, the evidence did not show that Esquivel committed two or more sexual abuse acts against D.E. during a period of thirty days or more in duration. *See* TEX. PENAL CODE ANN. § 21.02(b).

### A. Standard of Review and Applicable Law

Courts of appeal review the sufficiency of evidence establishing the elements of a criminal offense for which the State has the burden of proof under the single sufficiency

2

standard set out in *Jackson v. Virginia*. 443 U.S. 307, 319 (1979); *Fernandez v. State*, 479 S.W.3d 835, 837 (Tex. Crim. App. 2016). "[A] reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014) (quoting *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson,* 443 U.S. at 318–19)); *see Fernandez*, 479 S.W.3d at 837–38. When evaluating a sufficiency challenge, we must consider all of the evidence presented, whether properly or improperly admitted. *Fuller v. State*, 827 S.W.2d 919, 931 (Tex. Crim. App. 1992) (en banc).

It is unnecessary for every fact to point directly and independently to the guilt of the accused; it is enough if the finding of guilt is warranted by the cumulative force of all incriminating evidence. *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). In our sufficiency review, direct and circumstantial evidence are treated equally—that is, circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

This standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence." *Adames v.* State, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). We must not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999) (en banc).

3

We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

The reviewing court measures the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009). A hypothetically correct jury charge is authorized by the indictment, accurately sets out the law, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense in question. *Id.*; *Malik v. State*, 953 S.W.2d 234, 239 (Tex. Crim. App. 1997) (en banc). A hypothetically correct charge would instruct the jury to find Esquivel guilty if: (1) during a period that is thirty or more days in duration, (2) Esquivel committed two or more acts of sexual abuse against the same child, in this case, and (3) the child was younger than fourteen years of age. *See* TEX. PENAL CODE ANN. § 21.02(b).

## B.    Discussion

Esquivel contends that the evidence is insufficient to establish that he committed two or more acts of sexual abuse against D.E. over a period that is thirty days or more in duration. *See id.* He argues that there is insufficient evidence because there were no eye witnesses, no admissions on his part, no physical evidence connecting him to the sexual abuse, no scientific or medical evidence consistent with the occurrence of sexual abuse, inconsistent testimony, and no evidence to prove the five, or even two, of the alleged acts of sexual abuse. He notes that D.E. had no physical injuries consistent with

4

sexual assault. Esquivel also asserts that D.S., his ex-wife and D.E.'s mother, had an interest in the matter and a motive to punish him,[2] that there was no evidence of any emotional or personality changes in the child, and that the evidence presented showed D.E. acted inconsistently with how a sexually abused child would act. We disagree.

The State charged Esquivel with the following:

[O]n or about the 1st day of June, 2014, through the 3rd day of May, 2015, during the period that was 30 or more days in duration, when [Esquivel] was 17 years of age or older, committed two or more acts of sexual abuse against D.E., a pseudonym, a child younger than 14 years of age, said acts of sexual abuse of one or more of the following penal laws, including:

Indecency with a child under section 21.11(a)(1), namely, did then and there with the intent to arouse or gratify the sexual desire of [Esquivel], cause D.E., a pseudonym, to engage in sexual contact by causing the said D.E., a pseudonym, to touch the genitals of [Esquivel],

AND/OR

Aggravated sexual assault of a child, under section 22.021, namely, did then and there intentionally or knowingly cause the penetration of the sexual organ of D.E., a pseudonym, by [Esquivel's] finger,

AND/OR

Aggravated sexual assault of a child under section 22.021, namely, did then and there intentionally or knowingly cause the sexual organ of D.E., a pseudonym, to contact the mouth of [Esquivel],

AND/OR

Aggravated sexual assault of a child under section 22.021, namely did then and there intentionally or knowingly cause the mouth of D.E., a pseudonym, to contact the sexual organ of [Esquivel],

---

[2] Esquivel argues that his ex-wife had a motive to punish him and that she suggested answers to D.E. regarding the outcry statement. Esquivel refers us to testimony that occurred during D.E.'s cross-examination when, after reviewing a portion of her videotaped forensic interview made at a Child Advocacy Center (CAC), D.E. agreed that, during the interview, she said that everybody was telling her to say something. But when asked by the defense if "everyone" included her mother, D.E. responded, "No." We find no support for Esquivel's argument regarding D.E.'s mother.

AND/OR

Aggravated sexual assault of a child under section 22.021, namely, did then and there intentionally or knowingly cause the sexual organ of D.E., a pseudonym, to contact the sexual organ of [Esquivel].

D.E., who was eight at the time of the alleged offense and nine at the time of trial, testified that Esquivel touched her private parts with his hand and his tongue. D.E. also explained that Esquivel would make her touch his "middle part" with her hand. According to D.E., this happened more than ten times; it would happen every single time she went to her grandmother's home where Esquivel was living; "gooey stuff" would come out of his private part; it started happening around the second or third grade; and the last time it happened was the week before she made the outcry to her mother in May 2015.

The trial court admitted into evidence the medical records of the sexual assault nurse's exam of D.E. The records show that D.E. stated Esquivel would put his hands inside her shorts and touch her in her middle part (her female sexual organ). D.E. also told the nurse examiner that Esquivel would tell her to put his middle part in her mouth. According to the medical records, the incidents began around the second grade, "like the summer before [D.E.] started third grade . . . and] [t]he last time [D.E.] went to stay with him he did the same thing to [D.E.] again."

Three nurse examiners testified: Laura Dominguez, the nurse who examined D.E.; Sonja Edleman, the State's expert; and Cynthia Ann Garza, Esquivel's expert. All three stated that there was no trauma found to D.E.'s hymen, and all considered that to be a normal finding. As expressed by Garza, the examination of a child who has had sexual contact can often result in a normal finding or in a non-specific finding. Garza

6

explained that the findings are dependent on a number of factors, especially the type of alleged contact and the timeframe between the alleged acts and the examination. Garza also testified that D.E. gave an age-appropriate, "pretty specific and detailed history" and that if she, Garza, had been D.E.'s nurse examiner, she would have reported the case to Child Protective Services or law enforcement.

Finally, over Esquivel's objections, the trial court admitted Ilce Vergara's forensic videotaped interview of D.E.[3] Our review of the video, which was played in its entirety before the jury, reveals that D.E. described, in detail, multiple incidents that occurred between D.E. and Esquivel during her weekend visits with him from the middle of her second-grade year to the end of her third-grade year.

Considering the cumulative force of all of the evidence, circumstantial and direct, in the light most favorable to the verdict, whether properly or improperly admitted, drawing reasonable inferences based on that evidence, presuming the factfinder resolved any conflicting inferences in favor of the prosecution, and deferring to that resolution, we conclude that a rational fact finder could have found beyond a reasonable doubt that Esquivel committed two or more acts of sexual abuse against D.E. during a period of thirty days or more in duration. *See Fernandez*, 479 S.W.3d at 837–38; *Whatley*, 445 S.W.3d at 166; *Winfrey*, 393 S.W.3d at 768; *Adames*, 353 S.W.3d at 860; *Clayton*, 235 S.W.3d at 778; *Fuller*, 827 S.W.2d at 931; *see also* TEX. PENAL CODE ANN. § 21.02(b); *Jackson*,

---

[3] Ilce Vergara conducted the interview at Maggie's House, a CAC in Cameron County. We consider this video in determining whether the evidence was sufficient because reviewing courts are required to consider all of the evidence, even that which the trial court may have improperly admitted. *See Fuller v. State*, 827 S.W.2d 919, 931 (Tex. Crim. App. 1992) (en banc).

7

443 U.S. at 326; *Villarreal*, 286 S.W.3d at 327.   We reject Esquivel's sufficiency challenge and overrule his first issue.

**II.     COMPETENCY DETERMINATION AND COMMENT ON THE WEIGHT OF THE EVIDENCE**

Esquivel contends by his second issue that the trial court committed reversible error in questioning D.E. and qualifying her as a witness in the presence of the jury.   He also asserts that the trial court indirectly commented on the weight of the evidence.   We disagree.

**A.     Applicable Law**

**1.     Competency Determination**

The issue of the competence of a child witness is generally a question for the trial court.   *Watson v. State*, 596 S.W.2d 867, 871 (Tex. Crim. App. 1980); *Reyna v. State*, 797 S.W.2d 189, 191 (Tex. App.—Corpus Christi 1990, no pet.).   During a competency determination, the court will consider whether the witness possesses:   (1) the ability to intelligently observe the events in question at the time of the occurrence; (2) the capacity to recollect the events; and (3) the capacity to narrate the events.   *Hogan v. State*, 440 S.W.3d 211, 213–14 (Tex. App.—Houston [14 Dist.] 2013, pet. ref'd); *see Watson*, 596 S.W.2d at 870.   The third element involves the ability to understand the moral responsibility to tell the truth, to understand the questions posed, and to frame intelligent answers.   *Hogan*, 440 S.W.3d at 213–14; *see Watson*, 596 S.W.2d at 870.   The trial court must decide any preliminary question about whether a child witness is qualified to testify and must conduct any hearing on this "question so that the jury cannot hear it if . . . justice so requires."   TEX. R. EVID. 104(a), (c); *see id.* R. 601 (setting out that a child,

8

examined by the court and found to lack sufficient intellect to testify concerning the matters at issue, is incompetent to be a witness). Yet, "there is no literal requirement in the foregoing [evidentiary] rules that the competency hearing of a child be conducted outside the presence of the jury." *Reyna*, 797 S.W.2d at 192.

### 2. Comment on the Weight of the Evidence

Texas Code of Criminal Procedure article 38.05 provides that the trial court shall not "at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case." TEX. CODE CRIM. PROC. ANN. art. 38.05 (West, Westlaw through 2017 1st C.S.); *see Brown v. State*, 122 S.W.3d 794, 798 (Tex. Crim. App. 2003) (holding that a trial judge must refrain from making any remark calculated to convey his opinion of the case because jurors give special and peculiar weight to the language and conduct of the trial judge). A trial court "can lawfully provide guidance and manage the presentation of evidence from the bench without abandoning [its] role as an independent arbiter." *Strong v. State*, 138 S.W.3d 546, 552 (Tex. App.—Corpus Christi 2004, no pet.). But "[t]he trial court improperly comments on the weight of the evidence if it makes a statement that implies approval of the State's argument, indicates disbelief in the defense's position, or diminishes the credibility of the defense's approach to the case." *Simon v. State*, 203 S.W.3d 581, 590 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see Hoang v. State*, 997 S.W.2d 678, 681 (Tex. App.—Texarkana 1999, no pet.).

### B. Exchange Between the Trial Court and D.E.

Esquivel complains of the following exchange between the trial court and D.E., which occurred in the presence of the jury:

THE COURT: You can just have a seat right there, sweetheart.[4] How are you?

[D.E.]: Good.

THE COURT: And what's your name, dear?

[D.E.]: [D.E.]

THE COURT: Okay. Miss [D.E.], how old are you?

[D.E.]: I'm nine.

THE COURT: You're nine? Because of the fact that you're under the age of fourteen, I have to ask you some questions before I can administer the oath, okay? And that's because I need to make sure that you understand what the oath means. Fair enough?

[D.E.]: (Nodding head affirmatively.)

THE COURT: All right. Do you know what the difference is between telling the truth and telling a lie?

[D.E.]: Yes.

THE COURT: All right. Is telling the truth good or bad?

[D.E.]: Good.

THE COURT: All right. Now, if I tell you that you are wearing a black dress, is that the truth or a lie?

[D.E.]: A lie.

THE COURT: And if I tell you that we're at the beach right now, is that the truth or a lie?

[D.E.]: A lie.

---

[4] Esquivel does not complain of the trial court's use of "sweetheart."

THE COURT:        Now, if I tell you that you are wearing a pretty dress with a blue vest, is that the truth or a lie?

[D.E.]:        Yes.

THE COURT:        Yes, it's the truth, or—

[D.E.]:        The truth.

THE COURT:        Okay. If I tell you that today is May 25th and it's a Wednesday, is that the truth or a lie?

[D.E.]:        Truth.

THE COURT:        All right. I'm going to find that she can tell the difference between telling the truth and telling a lie.

And you know that you need to tell the truth today, dear?

[D.E.]:        Yes.

Before administering the oath, the trial court found "that [D.E.] can tell the difference between telling the truth and telling a lie." Esquivel objected and sought a mistrial.[5] The trial court overruled his objection and request.

## C.    Discussion

### 1.    Competency Determination in the Presence of the Jury

---

[5] Esquivel objected to the trial court "qualifying the witness as to being able to tell the truth or a lie in front of the jury." He explained that he felt "like it gives off the appearance that everything that she's going to be saying here today is truthful." We assume for the purposes of our discussion that Esquivel's objection preserved his competency-hearing challenge and his comment-on-the-weight-of-the-evidence arguments. *See* TEX. R. APP. P. 33.1(a) (stating that to preserve error for appeal, record must show that complaint was made to trial court and that trial court ruled on request or refused to rule and that "complaining party objected to the refusal"); *see also Unkart v. State*, 400 S.W.3d 94, 96 (Tex. Crim. App. 2013) ("We further conclude that appellant's request for a mistrial did not preserve error because any harm flowing from error in this case could have been cured by an instruction to disregard and in fact was cured by the totality of the trial judge's instructions.")

Esquivel first complains that the trial court erred in determining D.E.'s competency to testify before the jury. The evidentiary rules do not require the trial court to hold every hearing to determine the competency of a child witness outside the presence of a jury. *See Reyna*, 797 S.W.2d at 192. Nonetheless, Esquivel appears to be arguing that, in this case, justice required that the trial court do so. *See* TEX. R. EVID. 104(a), (c).

Esquivel argues that it would have been more appropriate to question D.E. outside the presence of the jury "to avoid the possibility of the court indirectly bolstering the credibility and believability of the child witness." Esquivel asserts that "considering the strength of the State's case, the lack of any medical, physical or scientific evidence consistent with a showing of sexual abuse, [and] the lack of any admissions by [Esquivel]," D.E.'s credibility and believability "was the most important issue at trial and the questioning by the judge in front of the jury left an impression on what her testimony is will likely be the truth." Without more, and in light of our determination that the evidence was sufficient to support Esquivel's conviction, we cannot conclude that justice required the trial court to question D.E. outside the presence of the jury. *See Watson*, 596 S.W.2d at 871; *Reyna*, 797 S.W.2d at 191–92. We conclude that the trial court did not abuse its discretion in qualifying D.E. with the jury present. *See Watson*, 596 S.W.2d at 871.

### 2. Comment on the Weight of the Evidence

Esquivel also complains that the trial court's reference to D.E. as "dear" went to the weight of the evidence. We disagree.

Here it is clear from the record that the trial court's references to nine-year-old D.E. as "dear" were part of a larger effort to make the child witness comfortable in the

12

courtroom. *See In re J.G.*, 195 S.W.3d 161, 178 (Tex. App.—San Antonio 2006, no pet.) (noting that the trial judge's statement to a child witness that the witness had done "very good" could not be properly understood without also considering the child's age at the time of his testimony); *Strong*, 138 S.W.3d at 552. It is also clear that the trial court was attempting to determine whether D.E. understood that she had a responsibility to tell the truth. *See Hogan*, 440 S.W.3d at 213–14; *see also Watson*, 596 S.W.2d at 870. It did not make a statement that implied approval of the State's argument, indicated disbelief in Esquivel's position, or diminished the credibility of Esquivel's approach to the case. *See Simon*, 203 S.W.3d at 590; *Hoang*, 997 S.W.2d at 681. We cannot conclude that the trial court improperly commented on the weight of the evidence when it referred to D.E. as "dear."

### 3. Summary

Having concluded that the trial court did not abuse its discretion determining D.E.'s competency before the jury and that it did not make improper judicial comments, we overrule Esquivel's second issue.

### III. ADMISSION OF THE CAC VIDEO

Esquivel contends by his third issue that the trial court abused its discretion when it admitted D.E.'s entire CAC video statement into evidence under the rule of optional completeness. *See* TEX. R. EVID. 107. The State responds that Esquivel's argument is misguided. It claims that Esquivel's use of the video excerpts and his references to the video process left multiple false impressions in the minds of the jurors and opened the

13

door to the admission of the entire video. *See id.*; *Walters v. State*, 247 S.W.3d 204, 217–18 (Tex. Crim. App. 2007).

## A. Standard of Review and Applicable Law

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2011). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Id.* If the trial court's decision is correct on any theory of law applicable to the case, we will uphold the decision. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

> Rule 107 provides:
>
> If a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject. An adverse party may also introduce any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent.

TEX. R. EVID. 107. Rule 107 is not invoked by the mere reference to a document, statement, or act. *Pena v. State*, 353 S.W.3d 797, 814 (Tex. Crim. App. 2011). Instead, the plain language of rule 107 provides "that in order to be admitted under the rule, the omitted portion of the statement must be 'on the same subject' and must be 'necessary to make it fully understood.'" *Sauceda v. State*, 129 S.W.3d 116, 123 (Tex. Crim. App. 2004) (en banc) (quoting TEX. R. EVID. 107).

When a party refers to a specific statement made during an interview that, if taken out of context, could create the possibility of the jury receiving a false impression of the statement, the opposing party is entitled to offer any other evidence that was necessary

14

to make the conversation fully understood.   *Credille v. State*, 925 S.W.2d 112, 117 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).   Under the rule of optional completeness, a complainant's entire videotaped statement must be admitted when:   (1) defense counsel asks questions concerning some of the complainant's statements on the videotape; (2) defense counsel's questions leave the possibility of the jury receiving a false impression from hearing only a part of the conversation, with statements taken out of context; and (3) the videotape is necessary for the conversation to be fully understood.   *See Tovar v. State*, 221 S.W.3d 185, 190–91 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Credille*, 925 S.W.2d at 117); *see also Cline v. State*, No. 13-11-00734-CR, 2013 WL 398916, at *4 (Tex. App.—Corpus Christi Jan. 31, 2013, no pet.) (mem. op., not designated for publication).

**B.    Discussion**

At Esquivel's request two portions of the video were played back to refresh D.E.'s memory, including the part where Esquivel claims D.E. said, "Everyone is telling me what to say" or "Everybody's telling [me] to say something" and the part where D.E. visually describes Esquivel's "private part" using her hands.   *See* TEX. R. EVID. 612.   Esquivel contends that showing D.E. these two video excerpts was not enough to open the door to the admission of the entire video under rule 107.   *See id.* R. 107.

**1.    "Everybody Tells Me"**

During cross-examination, Esquivel questioned D.E. about her participation in the May 28, 2015 CAC interview.   When D.E. could not remember her response to a question asked by the interviewer, the trial court granted Esquivel's request to refresh

15

D.E.'s memory with that portion of the videotaped interview. After refreshing her memory, Esquivel asked D.E. the following question: "And now that you've had an opportunity to refresh your memory with that, everybody's telling you to do something. Everybody's telling you to say something, right?"[6] D.E. answered, "Yes." Esquivel then asked if she was referring to all the people who she had talked to along the way, and D.E. again answered, "Yes."

D.E.'s specific answer on the videotape, however, if accurately described by Esquivel, was taken out of context. Our review of the video reveals that the interviewer was questioning D.E. about the first time Esquivel touched her. Specifically, D.E. was answering the question, "Tell me, did he touch anywhere else?" Assuming D.E.'s answer included the word "everyone," she responded, "No, but everyone tells me to touch, touch his male part."[7] The interviewer continued talking about the first incident and then asking about the last time something happened.

This specific portion of the videotape, taken out of the context and in combination with Esquivel's description of D.E.'s answer, could have created a false impression for the jury. *See Credille*, 925 S.W.2d at 117; *Tovar*, 221 S.W.3d at 190–91. So the State was entitled to offer other portions of the videotaped interview that were necessary to make the conversation fully understood. *See* TEX. R. EVID. 107; *Credille*, 925 S.W.2d at 117; *Tovar*, 221 S.W.3d at 190–91.

---

[6] Esquivel also described the response that D.E. could not remember as "something similar to, 'Everyone tells me to say.'"

[7] We are unable to understand D.E.'s exact response, although Vergara, the forensic interviewer, testified that she heard "Yeah, but, uh, he tells me to touch."

## 2. Description of "Middle Part"

Challenging D.E.'s credibility and her ability to observe the events in question and to recollect and narrate the events, Esquivel asked D.E. if she remembered visually describing Esquivel's "middle part." D.E. indicated she did not, and Esquivel refreshed her memory by playing that portion of the video. After viewing it, D.E. agreed that she illustrated the length of Esquivel's "middle part" with her hands by holding one hand about shoulder height and one about hip height.[8] Yet, on parts of the video that were not viewed, D.E. verbally described Esquivel's middle part as "hard," "big," "hair[y]," "gooey," and "brown in the middle." The State was entitled to offer D.E.'s description of Esquivel's "middle part" in the context of the entire interview in order to address Esquivel's challenge to D.E.'s credibility or to her ability to observe, recollect, and narrate the events in question. These omitted portions were on the same subject and arguably necessary to make D.E.'s statement describing Esquivel's "middle part" complete and fully understood. *See* TEX. R. EVID. 107; *Sauceda*, 129 S.W.3d at 123.

## 3. Incomplete or Misleading Information

Esquivel asked the following questions of D.E. about the interviewer helping her "when she would get stuck," suggesting the interviewer coached D.E.:

Q:    When you would get stuck in a spot, [the interviewer] would ask you a question to get you going again, right?

A:    Right.

Q:    Okay. And when you were describing things, you know, in your interview, she would ask you questions like, "Is it hard?" "Was it hard?" Was it hard or soft?" Do you remember that?

---

[8] We note that during her cross-examination, Vergara agreed that, during the interview, D.E. indicated that the size of Esquivel's "middle part" was something larger than a foot.

17

A:     No.

Q:     You don't remember her asking that?   Do you remember her asking you, "Did anything come out"?

A:     Yes.

Q:     Okay.   You remember her asking you that?

A:     Yes.

Q:     Do you remember her asking you, "What did he say when the yellow gooey stuff comes out?"   Do you remember her asking you questions like that?

A:     Yes.

Q:     Do you remember her asking you, "I know he would tell you—oh, what did he tell you"?   Do you remember her asking you those kind of questions?

A:     Yes.

Q:     Do you remember her asking you whether or not his hand was still or moving, when you couldn't say—you couldn't describe his hand? Do you remember her having to ask you that question?   When you couldn't describe the hand, she had to prompt you with "Was it still or was it moving?"   Do you remember that?

A:     Yeah.

Q:     Throughout the interview, you got stuck several times where Ms. V had to actually ask you questions to get you going again, right?

A:     Yeah.

The State directs us to the following exchange between Esquivel's counsel and

D.E. that it claims misled the jury, necessitating admission of the entire video:

Q:     Now, before you left, before you left from talking with your Grandma . . . and your mom, one of the last comments you made to them was

18

that [Esquivel] hadn't done anything to you with his hands or his boy part.   Do you remember telling them that?

A:   No.

Q:   You don't remember telling your Grandma . . . right before y'all finished up, saying, "Oh, well, he only did something to me with his mouth, but don't call the police"?   You don't remember saying that?

A:   No.

Our review of the video reveals no portion that included a recantation by D.E.

The State argues that the trial court properly admitted the entire video because there were multiple instances, including the two set out above, where Esquivel left a false impression on the minds of the jurors.   We agree with the State that, through the above portions of testimony, Esquivel opened the door by suggesting that D.E. was coached during the interview and by suggesting the video contained something it did not, thus misleading the jury.   By this testimony, the jury could have had a wrong impression regarding how the interview was conducted and what D.E. said during the interview.   The State was entitled to offer the entire interview to show the complete interview process, which was necessary to make it fully understood.   *See Jones v. State*, 963 S.W.3d 177, 182 (Tex. App.—Fort Worth 1998, pet. ref'd) (per curiam) ("The [r]ule only takes effect when other evidence has been introduced that is incomplete or misleading."); *Credille*, 925 S.W.2d at 117; *Tovar*, 221 S.W.3d at 190–91.

   **4.   Summary**

Here Esquivel's counsel asked questions concerning some of D.E.'s statements on the videotape; his questions left the possibility of the jury receiving a false impression from hearing only a part of the conversation, with statements taken out of context; and

19

the entire videotape was necessary to fully understand the conversation. *See Tovar*, 221 S.W.3d at 190–91 (citing *Credille*, 925 S.W.2d at 117); *see also Cline*, 2013 WL 398916, at \*4. So, under the rule of optional completeness, we conclude that the State was entitled to the admission of D.E.'s entire videotaped interview. *See* TEX. R. EVID. 107.

Because the trial court's decision to admit the complete videotaped CAC interview following D.E.'s testimony and during Vergara's direct examination did not lie outside the zone of reasonable disagreement, it did not abuse its discretion, and we will uphold its decision. *See Martinez*, 327 S.W.3d at 736; *De La Paz*, 279 S.W.3d at 344. We overrule Esquivel's third issue.

## IV. CROSS-EXAMINATION OF INTERVIEWER VERGARA AND MOTHER D.S.

By his fourth and fifth issues, Esquivel asserts that the trial court erred when it limited his cross-examination of two witnesses: Vergara, who was D.E.'s forensic interviewer; and D.S., who is D.E.'s mother and Esquivel's ex-wife. Esquivel claims that, by limiting his cross-examination, the trial court denied him a fair trial and his fundamental constitutional right to confront witnesses. *See* U.S. CONST. amend. VI.

### A. Cross-Examination of Vergara

By his fourth issue, Esquivel complains that he could not adequately cross-examine Vergara to rebut the State's direct examination because the trial court refused to allow him to replay portions of D.E.'s video interview that the jury had viewed in its

20

entirety during Vergara's direct examination.   He complains that, by this refusal, he was limited in his ability to adequately cross-examine Vergara.[9]   We disagree.

### 1.    Applicable Law and Standard of Review

The Confrontation Clause of the Sixth Amendment guarantees an accused the right to confront the witnesses against him.   *Id.*; *Paredes v. State*, 462 S.W.3d 510, 514 (Tex. Crim. App. 2015); *see Pointer v. State*, 380 U.S. 400, 403 (1965).   The scope of appropriate cross-examination is necessarily broad.   *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996).   A defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias, or interest for the witness to testify.   *Id.*   A trial court violates a defendant's constitutional right of confrontation when it limits appropriate cross-examination.   *Id.* at 496–97; *Hurd v. State*, 725 S.W.2d 249, 252 (Tex. Crim. App. 1987) (en banc).   We review a trial court's decision to limit cross-examination under an abuse of discretion standard.   *See Cruz-Escalante v. State*, 491 S.W.3d 857, 860 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

### 2.    Discussion

When Esquivel sought the admission of a portion of D.E.'s CAC video during Vergara's cross-examination, the trial court denied his request.   The court explained that the jury had "already gone through the whole thing," the jury "will remember on [its] own, and the jury "can take [the video] back with [it]."   The trial court informed Esquivel that he

---

[9] Esquivel also asserts that the trial court's denial of his request "left an impression that the portions he was addressing were not important or relevant and was an improper comment on the weight of the evidence."   He does not develop this argument further with appropriate citations to authority, and so, it presents nothing for our review.   *See* Tex. R. App. P. 38.1(i).

could ask "whatever [he] want[ed]" and could identify specific times on the CAC video for the jury's review during deliberations.

Following the trial court's ruling, Esquivel cross-examined Vergara about her use of leading questions during D.E.'s interview. Esquivel quoted certain of Vergara's questions and effectively cross-examined her about the leading nature of her questions. He provided the jury with specific video time references for review during deliberations. And when Vergara testified that she did not remember one of D.E.'s interview responses, the court allowed that portion of the interview replayed to refresh her memory.

Esquivel was able to pursue avenues of cross-examination that were reasonably calculated to expose any motive, bias, or interest Vergara might have had. See *Carroll*, 916 S.W.2d at 497. We cannot conclude that the trial court limited Esquivel's cross-examination of Vergara; thus, it did not abuse its discretion. *See Hurd*, 725 S.W.2d at 252; *Cruz-Escalante*, 491 S.W.3d at 860. We overrule the fourth issue.

## B.    Cross-Examination of D.S.

By his fifth issue, Esquivel contends that the trial court committed reversible error when it limited his ability to cross-examine D.S. Esquivel sought to cross-examine D.S. about an affidavit that she filed in support of her application for a protective order. Esquivel complains that when the trial court denied the introduction of this testimony for impeachment purposes, it denied him his Sixth Amendment right to confront this witness. *See* U.S. CONST. amend. VI.

### 1.    Applicable Law and Standard of Review

Specific to this issue, cross-examination "allows the jury to assess the credibility of the witness." *Carroll*, 916 S.W.2d at 499; *see Alford v. United States*, 282 U.S. 687, 691–92 (1931). It "allows facts to be brought out tending to discredit the witness by showing that his testimony in chief was untrue or biased." *Carroll*, 916 S.W.2d at 499; *see Alford*, 282 U.S. at 691–92. Notwithstanding the trial court's discretion in this area, jurors are entitled to have the benefit of the defense theory before them so that they can make an informed decision as to the weight to place on the witness's testimony, even though they may ultimately reject the theory. *See Johnson v. State*, 490 S.W.3d 895, 909 (Tex. Crim. App. 2016) (quoting *Davis v. Alaska*, 415 U.S. 208, 216 (1974)); *see also Sansom v. State*, 292 S.W.3d 112, 119 (Tex. App.—Houston [14h Dist.] 2008, pet ref'd) (mem. op.).

If the trial court erred in refusing to allow proper cross-examination regarding the credibility of a witness or the presentation of a defensive theory, we must then determine whether it was constitutional or non-constitutional error because different standards of review are involved. *See* TEX. R. APP. P. 44.2. For constitutional errors, "the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." *Id.* 44.2(a). For non-constitutional errors, any error "must be disregarded" unless the error affects an appellant's substantial rights. *Id.* 44.2(b).

The erroneous admission or exclusion of evidence is generally considered non-constitutional error, with rare exceptions. *Potier v. State*, 68 S.W.3d 657, 663, 665 (Tex. Crim. App. 2002) (en banc); *Melgar v. State*, 236 S.W.3d 302, 308 (Tex. App.—Houston

23

[1st Dist.] 2007, pet. ref'd) (citing *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)).   The erroneous exclusion of evidence can rise to the level of constitutional error when, for example, the excluded evidence "goes to the heart of the defense."   *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002); *Potier*, 68 S.W.3d at 663 ("At a minimum, a defendant must demonstrate that the excluded evidence was important to his defense.") (citing *United States v. Jefferson*, 925 F.2d 1242, 1254 (10th Cir.) ("A violation of the hearsay rule does not automatically equate to a constitutional violation of the Sixth Amendment").   But the exclusion of evidence that would only "incrementally" further the defendant's defensive theory is not constitutional error.   *See Ray v. State*, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005); *Potier*, 68 S.W.3d at 665 ("That [the defendant] was unable to . . . present his case to the extent and in the form he desired is not prejudicial where, as here, he was not prevented from presenting the substance of his defense to the jury.").

### 2.    Relevant Background

During cross-examination, D.S. agreed that she provided three statements, one of which was a July 2, 2015 affidavit made in connection with her application for a protective order.   Esquivel's counsel provided D.S. a copy of her affidavit to refresh her memory in order to respond to questions about whether she reported that D.E. experienced itchiness or irritation.   Later, the following cross-examination and bench conference occurred:

> [Esquivel]:   Okay.   When you prepared your affidavit for the purposes of a protection order, there was a scheduled hearing, right?
>
> [D.S.]:   Yes.
>
> Q.   Okay.   And Mr. Esquivel showed up, right?

24

A.      Yes.

Q.      Okay.   And he showed up prepared to contest the issuance of a protective order, right?

A.      Yes.

Q.      And it was dismissed, right?

A.      Yes.

Q.      Okay.   And the reason why that's important is because when you're filing the application for a protective order, you're basically saying that family violence has occurred in the past, and that it's likely to occur in the future, right?

A.      Can I see that?

Q.      Sure.  (Tendering document to the witness.)

[The State]:   Judge, the [S]tate's going to object.   This witness doesn't know, like, the reasons that a protective order might be granted or not granted.

. . . .

(At the bench, on the record.)

The Court:   What are we doing now?

[Esquivel]:   She's talking—

The Court:   Is there anything that has to do with this case?

[Esquivel]:   She's talking about the child being in fear for—

The Court:   Is there anything at all—

[Esquivel]:   Yes.   That's because of this case.

The Court:   Okay.   So this is based on this case?

[Esquivel]:   Yes.

25

The Court:    And?

[Esquivel]:    And they dismissed it, therefore, there was no issue with regards to future fear.

The State:    Judge, that's not always correct.

The Court:    Okay.   We're not going there.[10]

After the court recessed for the day, Esquivel preserved error regarding the trial court's decision to exclude this area of cross-examination by providing the following offer of proof—a concise summary of his proposed line of cross-examination:

> Let's see, the actual witness that was testifying's name is [D.S.]. She was the first witness to be called by the [S]tate—[D.S.] is also the biological mother of the complainant in this case, [D.E.].
>
> I was going to cross-examine pursuant to the Fifth, Sixth, and Fourteenth Amendment in connection to the existence of a temporary ex-parte protective order application and hearing.  I was going to specifically ask [D.S.] the purpose of the protective order, as she understood it.   Part of the allegations in this—that were made clear by [D.S.] is that the complainant is afraid of her father.
>
> The protective order itself must prove that there was an existence of family violence, and that there was an expectation of future family violence. She swore to the application.   She prepared an affidavit on July the 2nd of 2015, in support of the issuance of a protective order.   It was fertile ground for cross[-]examination.   The Court limited my testimony to this bill and prevented me from being able to introduce any evidence related to 2015-DCL-4075.
>
> The Court further limited my ability to effectively cross-examine [D.S.] regarding the purposes for the dismissal, if known to her at the time of the dismissal.   The Court also limited my ability to effectively cross-examine her in reference to the fact that Mr. Esquivel did appear, along with counsel, for the purposes of disputing the issuance of the protective order.

---

[10] The trial court implicitly denied Esquivel's request to ask D.S. about D.E.'s allegations of "fear."

26

> The Court further limited my ability to establish that there was no imminent threat of future danger, based on the existence of this protective order and other factual evidence that would have been deduced from the—that would have stemmed from this cross[-]examination.

*See* TEX. R. EVID. 103(a)(2) (providing that error may not be predicated upon a ruling which excludes evidence unless a substantial right of a party is affected and the substance of the evidence was made known to the court by offer of proof or was apparent from the context within which questions were asked); *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) (explaining that the proffer "must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the trial court can determine whether the evidence is relevant and admissible").

### 3. Discussion

Now on appeal, Esquivel argues that it was constitutional error for the court to exclude testimony regarding D.S.'s affidavit, the dismissal of the protective order, the purpose of the protective order, Esquivel's appearance at the hearing ready to contest the protective order, and other issues related to the request for the protective order and the accompanying affidavit. Esquivel claims that he needed this testimony to impeach D.S.'s previous statements that D.E. feared Esquivel, which would arguably support his defensive theory that D.E. did not fear him because he had not committed the charged offense.

We first assume without deciding that the trial court abused its discretion when it did not allow Esquivel to cross-examine D.S. to develop facts that would tend to discredit her earlier testimony that D.E. feared Esquivel. *See Carrol*, 916 S.W.2d at 499. Having

27

assumed error, we next determine whether the trial court committed constitutional or unconstitutional error so that we can apply the proper standard of review. *See* TEX. R. APP. P. 44.2(a).

Our review of the record reveals that on direct examination D.S. testified that after the outcry, D.E.'s demeanor was "scared. [D.E.] was more vigilant to the point where . . . she didn't want to sleep [in her bedroom] with those sheer curtains anymore." D.S. also testified, "Sometimes [D.E.] just wanted to stay home . . . . She didn't always want to go [to her grandmother's house.]" On cross-examination, D.S. agreed that she had testified earlier that D.E. had this fear of her father. However, D.S. also testified that Esquivel appeared at the hearing on her protective-order application and contested the application. She further stated that the application had been dismissed, suggesting that the reasons for the application, which would have included family violence, had been resolved or not proven.

Pursuing his "no fear" defensive theory, Esquivel cross-examined the complainant D.E., who agreed that she had never told D.S. that she feared other people. D.E. also agreed that she did fun things with Esquivel including painting toenails (between June 2014 and May 2015), driving with him on Easter (April 2015), attending her cousin's party (March 2015), and going to an awards ceremony (August 2014). The trial court admitted photographs of these activities, and D.E. agreed that the photographs would show that she was having fun with Esquivel during this time (between June 2014 and May 2015) and was not afraid to be around him. Esquivel also cross-examined D.E. about communications she had with him from June of 2014 through May of 2015. D.E. testified

that she would text him often saying things like "I love you, Daddy," and "I miss you, Daddy." She agreed that these texts were words she wanted to exchange with Esquivel, because that was the way she felt about him.

Vergara, D.E.'s forensic interviewer, also testified during cross-examination that she did not recall D.E. being afraid of Esquivel. She remembered D.E. talking about fun, family times with Esquivel from June 2014 through May 2015.

Based on the above, we conclude that D.S.'s proffered testimony would have only "incrementally" furthered Esquivel's defensive theory. Any error in refusing to admit such testimony on cross-examination was non-constitutional error. *See* TEX. R. APP. P. 44.2.

Although Esquivel complains only of constitutional error, we will review any non-constitutional error and disregard it unless the error affected Esquivel's substantial rights. *See Ray,* 178 S.W.3d at 836; *Potier*, 68 S.W.3d at 665; *see also* TEX. R. APP. P. 44.2. Applying the same analysis in our review of the entire record, we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). The evidence before the jury allowed facts to be brought out that tended to discredit D.S. by contradicting her testimony regarding D.E.'s fear of Esquivel. *See Carroll*, 916 S.W.2d at 499. And Esquivel's defense theory was before the jury through other testimony so that the jurors could make an informed decision regarding the weight to accord D.S.'s testimony. *See Johnson*, 490 S.W.3d at 909; *see also Sansom*, 292 S.W.3d at 119. We conclude then that error, if any, was harmless, and we must disregard it. *See* TEX. R. APP. P. 44.2.

We overrule Esquivel's fifth issue.

29

## V.    D.E.'s Medical Records

Esquivel complains by his sixth issue that the trial court committed reversible error in refusing to admit D.E.'s medical records into evidence. He claims that the medical records would have shown no medical complaints by D.E. and no physical injuries consistent with sexual abuse. The State responds that the court did not err because Esquivel did not offer the proper predicate to have the records admitted, and even if properly authenticated, Esquivel failed to show how the omission of the medical records harmed him. We agree with the State.

### A.    Applicable Law

Hearsay is a statement, other than one made by the declarant while testifying at trial, that is offered to prove the truth of the matter asserted. *See* TEX. R. EVID. 801(d). Hearsay is not admissible as evidence unless an exception applies. *Id.* R. 802. One exception to the rule of hearsay is records of a regularly conducted activity. *Id.* R. 803(6). Rule 803(6) provides that the hearsay rule does not exclude "[a] record of an act, event, condition, opinion, or diagnosis" if:

(A)    the record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B)    the record was kept in the course of a regularly conducted business activity;

(C)    making the record was a regular practice of that activity;

(D)    all these conditions are shown by the testimony of the custodian or another qualified witness, or by an affidavit that complies with Rule 902(10); and

(E)    the opponent fails to demonstrate that the source of information or the method or circumstances of preparation indicate lack of

30

trustworthiness. "Business" as used in this paragraph includes every kind of regular organized activity whether conducted for profit or not.

*Id.*

In sum, rule 803(6) provides that "records of a regularly conducted business activity are admissible if they were made at or near the time of the activity, made by, or from data created by, a person with knowledge, and kept as part of a regularly conducted business activity." *In re J.G.*, 112 S.W.3d 256, 262 (Tex. App.—Corpus Christi 2003, no pet.) (citing TEX. R. EVID. 803(6)); *Mitchell v. State*, 750 S.W.2d 378, 379 (Tex. App.—Fort Worth 1988, pet. ref'd). "[A] qualified witness need not have personal knowledge as to the contents of the records but rather needs only personal knowledge of the mode of preparation of the records." *Id.*; *see Montoya v. State*, 832 S.W.2d 138, 141 (Tex. App.—Fort Worth 1992, no pet.); *Mitchell*, 750 S.W.2d at 379.

**B.    Discussion**

During the cross-examination of D.S., Esquivel offered D.E.'s medical records from the Harlingen Kid's Clinic as defendant's exhibit 1.   The State objected that D.S. was not the proper custodian of the records.   Esquivel responded that D.S. "identified [the records] as being accurate and reliable . . . [and] identified them on the time and dates." The trial court disagreed with Esquivel and sustained the State's objection, explaining that the medical records "have to be properly authenticated."

On appeal, Esquivel argues that D.S. "was able to identify the medical records, was familiar with the record, and authenticated them."   Yet simply identifying the record and being familiar with the record does not satisfy the predicate for the introduction of the

records as the custodian or as any other qualified witness. *See* TEX. R. EVID. 803(6)(D); *In re J.G.*, 112 S.W.3d at 262; *see also Montoya*, 832 S.W.2d at 141; *Mitchell*, 750 S.W.2d at 379. There is no evidence that D.S. had personal knowledge of the mode of preparation of the records. *See In re J.G.*, 112 S.W.3d at 262. This is required to qualify as a witness who can authenticate a record. *See id.* So, under the rule, D.S. was not the proper person to lay the predicate as a custodian or other qualified person. *See* TEX. R. EVID. 803(6)(D); *In re J.G.*, 112 S.W.3d at 262; *see also Montoya*, 832 S.W.2d at 141; *Mitchell*, 750 S.W.2d at 379.

Even were we to conclude that D.S. was a proper qualifying witness and that the records were admissible under rule 803(6), Esquivel has failed to show how the court's denial of his request to admit the medical records harmed him. *See* TEX. R. APP. P. 44.2. Esquivel argues that the records would have shown that there was no mention of complaints about irritation and or itchiness near D.E.'s vaginal area or of physical injury consistent with sexual abuse. But D.S. and the nurse examiners provided testimony regarding the lack of complaints. D.S. testified that she never told the clinic doctors about irritation or itchiness, and thus, there would not be any mention of these matters in the medical records. And the nurse examiners all testified that there was no trauma found to D.E.'s hymen, which is a normal finding. As one nurse examiner explained, the findings are dependent on a number of factors, most specific of which is the type of

32

contact and the timeframe between the alleged acts and the examination.[11]   Based on

our review of the record, we conclude that error, if any, did not harm Esquivel.

We overrule Esquivel's sixth issue.

## VI.    CHARGE ERROR

In his seventh and eighth issues, Esquivel complains of charge error.   He asserts

that it was error to instruct the jury on a lesser-included offense at the guilt phase and on

good-time credit at the punishment stage.   We find Esquivel's arguments to be without

merit.

## A.    Standard of Review

In analyzing a jury-charge issue, we first determine whether error exists.   *See*

*Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984) (en banc) (op. on reh'g),

*overruled on other grounds*, *Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988)

(en banc); *see also Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009).   If we

find error and the appellant objected to the error at trial, as in this case, reversal is required

if there was some harm—i.e., if the error is calculated to injure the rights of the defendant.

*Barrios*, 283 S.W.3d at 350; *Almanza*, 686 S.W.2d at 171.

## B.    Challenge to Jury Instruction on Lesser-Included Offense

In his seventh issue, Esquivel asserts that the trial court committed reversible error

when it granted the State's request for a lesser-included-offense jury instruction for

continuous sexual assault of a child.   Relying on the *Rousseau–Royster* line of cases,

---

[11] We also note that the trial court never limited Esquivel's questioning of D.S. during cross-examination as to these symptoms not being included in the medical records; the trial court only denied the admissibility of the medical records because they were not properly authenticated.

33

Esquivel claims that the court erred because the State did not show that if Esquivel was guilty, he was guilty only of a lesser offense—either aggravated sexual assault of a child or indecency with a child. *See Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993) (en banc) (providing that a defendant must show (1) that the lesser-included offense must be included within the proof necessary to establish the offense charged and (2) that there is some evidence to support that if he is guilty, he is guilty only of the lesser offense); *Royster v. State*, 622 S.W.2d 442, 446–47 (Tex. Crim. App. 1981) (en banc) (op. on reh'g) (same); *see also Arevalo v. State*, 943 S.W.2d 887, 889–90 (Tex. Crim. App. 1997) (en banc) (holding that both the State and the defendant were required to satisfy both prongs of the *Royster-Rousseau* test), *overruled by Grey v. State*, 298 S.W.3d 644, 645 (Tex. Crim. App. 2009).

The State argues that Esquivel's reliance on the *Royster–Rousseau* line of cases is misplaced because *Grey v. State* overruled the *Arevalo* holding. *See Grey*, 298 S.W.3d at 645. The State further asserts that, under *Grey*, it must only show the first prong of the *Royster–Rousseau* test—that the jury instructions requested are for actual lesser-included offenses of the greater offense charged. *See id.* The State claims that it is not bound by the second prong of the *Royster-Rousseau* test when it requests the submission of a lesser-included offense. *See id.* We agree with the State.

Overruling *Arevalo*, the Texas Court of Criminal Appeals held that when the State requests a jury instruction on a lesser-included offense, it must only show that the jury instructions requested are for an actual lesser-included offense of the greater offense charged. *Id.*; *see Sifuentes v. State*, 494 S.W.3d 806, 818–19 (Tex. App.—Houston

34

[14th Dist.] 2016, no pet.). Esquivel asserts that the State failed to demonstrate the second prong—that there is some evidence to support that if he is guilty, he is guilty only of the lesser offense—but the State is no longer bound to make such a showing.

Esquivel does not challenge the first prong, which, under *Grey*, is the State's only required showing; instead, Esquivel concedes that indecency with a child and aggravated sexual assault are included within the proof necessary to establish continuous sexual assault of a child. *See Rousseau*, 855 S.W.2d at 673. Because the offenses of indecency with a child and aggravated sexual assault are included within the proof necessary to establish continuous sexual assault of a child, the State satisfied its burden. *See Carmichael v. State*, 505 S.W.3d 95, 100 (Tex. App.—San Antonio 2016, pet. ref'd) (explaining that the predicate offenses listed under section 21.02(c) are lesser-included offenses of continuous sexual abuse); *see also* TEX. PENAL CODE ANN. § 21.02(c)(2)–(4) (including predicate offenses of "indecency with a child under [s]ection 21.11(a)(1), if the actor committed the offense in a manner other than by touching, including touching through clothing, the breast of a child" and "aggravated sexual assault under [s]ection 22.021"). The trial court did not err when it included a lesser-included-offense instruction in the guilt/innocence charge. We overrule Esquivel's seventh issue.

## C.     Challenge to Jury Instruction on Good-Time Credit

By his final issue, Esquivel contends that the trial court committed reversible error at the punishment phase of the trial when it instructed the jury that he could be awarded good conduct time. We disagree.

At the punishment hearing, Esquivel offered the following objection to the trial

court's inclusion of good-time-credit language in the instruction:

> While the inclusion of [the language from the parole statute] gives . . . the
> jury the impression that this particular defendant would be eligible for
> release for the purposes of good time that he may have earned in that
> institution where he shall be committed[,] it's our position that according to
> statute, he's not going to be eligible for any good time earned credit[—]that
> the institution where he'll be institutionalized is not going to be allowed to
> assess any good-time credit."[12]

The trial court overruled Esquivel's objection and provided the following basis for its ruling:

> I am going to allow the language in there for good-time credit.   The statute
> says they are not eligible for parole; however, good-time credit is dependent
> on the institution itself, and he would be eligible for good-time credit, even

---

[12] The instruction set out in Texas Code of Criminal Procedure article 37.07, section 4(a), edited to show the changes made in this case, provides the following:

> Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.
>
> ~~It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.~~
>
> Under the law applicable in this case, [you are instructed that the defendant will not become eligible for parole for this offense.] ~~if the defendant is sentenced to a term of imprisonment, the defendant will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time the defendant may earn. If the defendant is sentenced to a term of less than four years, the defendant must serve at least two years before the defendant is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.~~
>
> It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.
>
> You may consider the existence of the ~~parole law and~~ good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4 (West, Westlaw through 2017 1st C.S.).

36

though he cannot get paroled. So even though he's sentenced to say, twenty-five years, he might get out a little bit before the twenty-five years, but just because of good-time credit. But even then, he would not be on parole; he would have just completed his sentence with any good-time credit. But even then, we're going to instruct them that they are not to guess how much time that would be.

And in here, it also tells them that he would not be eligible for parole on this offense.

Although not mandatory under the offense for which Esquivel was convicted, the trial court allowed a parole instruction that included good-time-credit language. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (West, Westlaw through 2017 1st C.S.) (setting forth a model instruction directing the jurors "not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant" and "not to consider the manner in which the parole law may be applied to this particular defendant," "unless the defendant has been convicted of an offense under Section 21.02, Penal Code," among others); *see also Chavez v. State*, No. 05-12-00415-CR, 2013 WL 2420651, at *2 (Tex. App.—Dallas 2013, pet. ref'd) (op., not designated for publication) ("Chavez was convicted of continuous sexual abuse of a child, a violation of section 21.02 of the penal code. . . . Thus, the instructions to inform a jury about the law of parole contained in article 37.07 do not apply to Chavez.").[13] Now on appeal, Esquivel argues that the good-time-credit instruction conflicts with the instruction that the jury is not to consider the manner in which parole law may be applied to Esquivel, who was convicted of continuous sexual assault of a child, an offense that carries a minimum mandatory

---

[13] Esquivel neither argued in the trial court nor argues on appeal that the trial court erred when it included the parole charge instruction because it is not statutorily mandated for a conviction of continuous sexual assault of a child. That argument is not before us. *See* TEX. R. APP. P. 47.1.

sentence of at least twenty-five years to life *without parole*.   *See* TEX. PENAL CODE ANN. § 21.02; *see* TEX. GOV'T CODE ANN. § 508.145.   We disagree.

Texas Government Code section 498.003(b) and (d), as explained by the Texas Court of Criminal Appeals in *Luquis v. State*, supports the trial court's basis for including the instruction in the charge.   *See* TEX. GOV'T CODE ANN. § 498.003(b), (d) (West, Westlaw through 2017 1st C.S.); *Luquis v. State*, 72 S.W.3d 355, 360 & n.4 (Tex. Crim. App. 2002).   The *Luquis* Court explained that the over-all purpose of the parole instruction, which included the good-time explanation, was to inform jurors of the concepts as a general proposition.   *Luquis*, 72 S.W.3d at 360.   At the same time, the instruction prohibited the jury from using its notions of parole or "good conduct time" in any calculation for determining the appropriate punishment.   *Id.*   The court of criminal appeals set out that "[t]he instruction also refers to the concept of 'good conduct time' and states that a person sentenced to prison might earn some reduction in his period of incarceration (though not a reduction of his *sentence*) through the discretionary award of good conduct time."   *See id.*   It continued noting,

> The award of "good conduct time" serves an important purpose in a penological system.   It encourages good behavior, rehabilitation efforts, self-improvement and self-discipline.   All of these awards are discretionary and all such awards may be forfeited.   For a Texas prisoner, "trusty status" (which determines the level of "good conduct time" credits) may result in a better work assignment, access to more personal privileges, residence in a less restrictive environment, and may possibly reduce the ultimate amount of time spent in prison.

*Id.* at 360 n.4.   Based on this analysis, we conclude that the trial court did not err at the punishment phase of the trial in submitting the complained-of instruction to the jury.   We overrule Esquivel's eighth issue.

38

## VI.    CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 14th
day of December, 2017.